**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

In re:                                                      Case No.: 14-19672-LMI

Riverwalk Jacksonville Development, LLC,          Chapter 11

Debtor.

_____/

**DEBTOR'S MOTION TO CONTINUE HEARING ON DISCLOSURE**
**STATEMENT AND TO EXTEND THE EXCLUSIVE SOLICITATION**
**PERIOD 60 DAYS FROM THE NEW DISCLOSURE HEARING**

Debtor and Debtor-in-Possession, Riverwalk Jacksonville Development, LLC (hereafter "RJD" or "Debtor"), through counsel, hereby moves to continue the hearing on the Debtor's filed Disclosure Statement and to extend the Debtor's exclusive solicitation period (this "Motion"), and in support thereof states as follows:

1.      This case was filed under Chapter 11 on April 28, 2014.  The Court is familiar with the underlying facts of this case.  The Debtor owns four non-contiguous parcels of property on the Jacksonville Riverwalk in Jacksonville, Florida.  The parcels surround the Wyndham Hotel, a 322 room convention hotel.  One of the waterfront parcels is unencumbered.  A Charthouse restaurant claims to have a lease on a portion of the other waterfront property.  The Debtor asserts that the 1980 land lease with Charthouse has expired; Charthouse contends that the lease is still effective.  The remaining two parcels are not waterfront property and largely contain parking which is presently used by the hotel and surrounding businesses (the "Parking Lot Parcels").  The properties basically form a "doughnut" around the Wyndham property.  A schematic of the properties is attached as Exhibit "A."

2.      The two major creditors in the case are U.S. Century Bank ("U.S. Century"), which asserts that it is owed $1,560,517.00, and Sabadell United Bank, N.A. ("Sabadell"), which asserts that it is owed $3,877,734.00. The Debtor disputes the exact amount of the U.S. Century debt for accounting reasons.  The Debtor disputes the amount of the Sabadell debt due to the fact that the Debtor believes that the loan was improperly accelerated and default rate interest was prematurely applied.

3.      In any event, both U.S. Century and Sabadell are oversecured.  U.S. Century's $1,560,517.00 claim is secured by the Parking Lot Parcels worth approximately $6,500,000.00. In its proof of claim, U.S. Century admits to being oversecured by about $3.0 million dollars. Sabadell's claim is secured by the Charthouse property worth at least $4,500,000.00 (according to the Sabadell proof of claim).  This Court previously has approved cash collateral arrangements wherein, *inter alia,* Sabadell is receiving actual payments of $5,000.00 a month against real estate taxes and in excess of $10,000.00 a month in separate adequate protection payments (which equates approximately to ongoing interest on its debt).  So not only is Sabadell oversecured with an equity cushion, but the Debtor is maintaining the debt level.   All properties are maintained and insurance is current.

4.      The Debtor filed its Plan and Disclosure Statement on November 11, 2014.  In relevant part, the Debtor's Disclosure Statement provides:

> The owner of the Wyndham Property located at the center of the RJD Properties (the "doughnut hole") recently published a "Call to Bid" on the purchase of the 322-room Wyndham hotel and Wyndham Property, for September 18, 2014. The Call to Bid notice also provided that a redevelopment opportunity was available by assembling surrounding parcels (i.e., the RJD Properties) for a mixed use project. The Debtor has been actively engaging in discussions with all of the serious interested parties to the proposed Wyndham transaction. Indeed, certain of the prospective purchasers of the Wyndham property have sought out the Debtor. As of this writing, the Wyndham Property owners have finally settled on a purchaser. As of this writing, the Wyndham Property owners and the purchaser are negotiating a contract for sale and purchase of the Wyndham Property. The

2

Aaronson Schantz, P.A. | Miami Tower | 100 SE 2nd Street, 27th Floor | Miami, Florida 33131 | Ph 786.594.3000 | Fax 305.424.9336

purchaser is simultaneously discussing a Transaction with RJD. It is reasonably anticipated that the purchaser/RJD Transaction will be the basis for the Distributions contemplated by this Plan of Reorganization. It is anticipated that, by the time of the Disclosure Statement hearing, the relevant elements of a completed Transaction will be disclosable, subject to certain confidentiality provisions.

Disclosure Statement Page 19 [ECF 65]

5.      As of this writing, the identified purchaser (the "Purchaser") of the Wyndham Property has determined to purchase certain of the Debtor's properties in conjunction with its purchase of the hotel property. The Debtor contemplates that the proceeds from the purchase of these properties will be devoted to the Plan and the ongoing business.  At this point, the Debtor is prepared to suggest, but will not be bound to, the prospect of retiring the U.S. Century debt in full, and to curing the Sabadell alleged default and possibly restructuring the Sabadell debt in a manner satisfactory to the creditor.

6.      The Purchaser has not yet finalized its contracts either with Wyndham or with the Debtor.  Draft contracts are presently being circulated but neither contract has been executed as of the filing of this Motion.  These contracts are quite involved, particularly the contract to purchase the Wyndham Property which involves the purchase of an existing convention hotel business operation, tangible and intangible assets, and other assets of the owner of the hotel.  The Debtor's contract is not nearly as complex and there appears not be any financing issues associated with the Debtor's contract.  However, the Purchaser, for obvious reasons, insists on finalizing both contracts at the same time.

7.      The Debtor verily believes that all negotiations and financing issues will be resolved by all parties within the next 45 to 60 days.  At such time, the Debtor should be able to finalize an Amended Plan of Reorganization and Amended Disclosure Statement which will set forth additional detail regarding the particular transactions and the specific transaction which will

3

AARONSON SCHANTZ, P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

fund the Debtor's reorganization. Accordingly, the Debtor respectfully requests that the Disclosure Statement hearing be continued for 60 days, and that the Debtor's exclusive solicitation period likewise be extended for 60 days beyond the new Disclosure Statement hearing date.

8.      While it is understandable that the significant creditors in this case are frustrated with the lack of detail in the present Disclosure Statement, the Debtor herein would repeat that it fully intends to provide sufficient detail of the transactions which will fund this plan. It is not for the Debtor to divine the resolution of ongoing negotiations largely between third parties.

9.      The Debtor understands the fact that the major creditors are unsatisfied with the present Disclosure Statement. This is exactly why the Debtor has been more than reasonable, in fact, generous, in its adequate protection arrangements in this case.

10.     Pending contract finalization, the secured creditors remain wholly adequately protected. U.S. Century retains an equity cushion of millions of dollars. Under the present state of negotiations, U.S. Century Sabadell will be satisfied in full in connection with this reorganization. It makes no sense for U.S. Century to foreclose a $1.56 million dollar mortgage on property reasonably worth well in excess of $6.0 million dollars.

11.     Sabadell has an equity cushion of approximately one million dollars that is not eroding because the Debtor is making adequate protection payments equal to accruing interest, the properties are being maintained and insured, and taxes are being escrowed monthly. In addition, in the present climate, the property is not depreciating and (as indicated by the sale of the adjoining hotel, which also will be thoroughly renovated and remodeled) is probably appreciating. In addition to this, Sabadell is presently holding in cash:

        a.      Charthouse payment of 2013 real estate taxes to Sabadell of approximately $45,000.00;

4

AARONSON SCHANTZ, P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

b.      Debtor's pre-petition  real estate tax escrow for 2013 of $40,000.00;

c.      Debtor's post-petition real estate tax payments of $5,000.00 per month since May 2014, totaling $40,000.00;

d.      Charthouse rental payments of $5,095.00 per month since February, 2014, totaling $61,140.00 to date;

e.      Debtor's additional cash collateral payments to Sabadell of $5,000 per month since August 28, 2014, totaling $25,000.00 to date.

As indicated above, Sabadell is continuing to receive approximately $10,095.00 a month in adequate protection payments in addition to collecting real property taxes in escrow.

9.      CHLN has also filed an Objection to Debtor's Disclosure Statement [ECF 84]. CHLN purportedly holds the Charthouse lease by virtue of its supposed assignment from the prior leasehold under the 1980 lease.  By its own admission:

> 4.      The Lease was assigned to CHLN, Inc. by original tenant CHE, Inc. At that time, CHLN was a subsidiary of CHE, Inc., and therefore under the terms of the Lease, the assignment did not require the consent of the Debtor. The Debtor disagreed with this position and brought suit against CHLN eight years ago, in 2007, in a case styled *Riverwalk Jacksonville Development, LLC v. CHLN, Inc.*, Case No. 16-2007-CA-000443, which is still currently pending in the Circuit Court for the Fourth Judicial Circuit in and for Duval County, Florida.
>
> ECH 84, Pg 2

The Court will recollect that the lease provided for the unfettered consent of the landlord, Debtor herein, to any assignment of lessee's interest under the 1980 lease to a third party.  CHLN is a subsidiary of Landry's, Inc.  Landry's purchased a block of CHE, Inc. leases as part of a publically disclosed transaction, and only after Debtor had refused to consent to the transfer of this (then and now) substantially underpriced lease, instantaneously, and for only a moment, CHLN allegedly became a "subsidiary" of CHE, Inc.   As a "subsidiary," CHLN did not need the consent of the landlord to effectuate the assignment. Moments later (and not disclosed in public

5

Aaronson Schantz, P.A. | Miami Tower | 100 SE 2ᴺᴰ Street, 27ᵀᴴ Floor | Miami, Florida 33131 | Ph 786.594.3000 | Fax 305.424.9336

documents) CHNL again became a subsidiary of Landry's.  The Debtor has taken the position that CHLN should not do indirectly and by artifice, what it was not permitted to do directly by the lease.  The Debtor has steadfastly taken the position since the purported assignment that the CHLN "lease" is a month-to-month tenancy.

10.    Since the inception of this case, the Debtor has sought to have a meaningful conversation with CHLN to avoid continued controversy and litigation and to hopefully enter into a market rate lease.  Counsel have met but unfortunately, there have been no substantive discussions that have emanated from these efforts.  Under Debtor's present Plan, the Debtor is rejecting the CHLN lease.  While the Debtor is cognizant of the fact that its lease rejection may not dispossess CHLN (11 U.S.C. § 365(h), because the CHLN lease property is surrounded by Debtor's other properties, the Debtor believes that, upon rejection, it may no longer be obligated to provide CHLN access through its other properties.

11.    While CHLN is certainly an interested party to this case, the Debtor would ask the Court to be cognizant of the issues between the parties.  CHLN has a direct interest in avoiding the prospect of lease rejection, or the prospect of going forward under a market rate lease, and/or the ultimate resolution of the assignment litigation which might result in eviction.  In the interim, while CHLN waits for a more specific Disclosure Statement, CHLN continues to enjoy a dramatically undervalued lease, and it now has asserted a claim for the "return" of "$101,947.00+" in taxes that it paid pursuant to the terms of the lease that Landry's has only now "discovered" in the course of this case, to have been excessive.  CHLN will not suffer in any manner by the continuation of the Disclosure Statement hearing in this case, to permit Debtor to finalize its sale negotiations.

Aaronson Schantz, P.A. | Miami Tower | 100 SE 2ND Street, 27TH Floor | Miami, Florida 33131 | Ph 786.594.3000 | Fax 305.424.9336

## ARGUMENT

### A. Relief Requested.

12.     By this Motion, Debtor respectfully requests this Court continue the Disclosure Statement hearing presently set for January 14, 2014 at 11:30 a.m. for 60 days and, pursuant to Section 1121(d), extend the Debtor's exclusivity period to solicit acceptances of its Plan of Reorganization and Disclosure Statement  for 60 days thereafter, without prejudice to Debtor's right to seek an additional extension, if necessary.

### B. Authority for the Relief Requested.

10.     Under Bankruptcy Code Section 1121, only a debtor may file a plan during the 120 day period following the filing of the bankruptcy petition, and only the debtor may solicit acceptances for a plan during the 180 day period following the filing of the petition. *See* Section 1121(b)-(c)(3). This "exclusivity period" is intended to afford a debtor a meaningful opportunity to develop and confirm a consensual plan of reorganization and reorganize under chapter 11. *In re Ames Dep't Stores Inc.*, 1991 WL 259036, at *3 (S.D.N.Y. Nov. 25, 1991) ("The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to negotiate with its creditors"); H.R.Rep.No. 95-595, 92 Cong. 2d. Sess. 232.  Under Section 1121(d), the court may for cause extend the 120–day period for up to 18 months after the date the petition and the 180–day period for up to 20 months after the date of the petition.  *See* Section 1121(d)(1)-(d)(2)(B).

11.     The question of whether to extend the exclusivity period is within the discretion of the court, and the determination is fact-specific. *In re R.G. Pharmacy, Inc.*, 374 B.R. 484, 487 (Bankr.D.Conn.2007).  Courts have developed the following non-exclusive list of factors relevant to determining whether cause exists to grant an extension: (i) the size and complexity of the case; (ii) the necessity of sufficient time to negotiate and prepare adequate information; (iii) the

AARONSON SCHANTZ, P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

existence of good faith progress toward reorganization; (iv) whether the debtor is paying its debts as they come due; (v) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (vi) whether the debtor has made progress negotiating with creditors; (vii) the length of time the case has been pending; (viii) whether the debtor is seeking an extension to pressure creditors; and (ix) whether unresolved contingencies exist. *In re Hoffinger Industries, Inc.*, 292 B.R. 639, 643-44 (B.A.P. 8th Cir. 2003); *In re Friedman's, Inc.*, 336 B.R. 884, 888 (Bankr. S.D.Ga. 2005), *In re Serv. Merch. Co.*, 256 B.R. 744, 751 (Bankr.M.D.Tenn. 2000); *In re McLean Indus. Inc.*, 87 B.R. 830, 34 (Bankr. S.D.N.Y. 1987). Courts have "a high degree of flexibility" in designing the appropriate test for each case and "is not required to apply any particular set of factors, or number of factors, in every case." *Official Comm. of Unsecured Creditors v. Elder– Beerman Stores Corp. (In re Elder–Beerman Stores Corp.)*, 1997 WL 1774880, at *4 (S.D.Ohio June 23, 1997). The focus should instead be on "the unusual circumstances affecting the Debtor's ability to effectuate a Plan." *Serv. Merch.*, 256 B.R. at 751.

12.     The complex contract negotiations and financial structuring of the Wyndham Property purchase, with the corresponding purchase of certain of the Debtor's Properties, is a multi-layered, multi-party transaction involving non-Debtor parties who are balancing their own interests, which are separate and distinct from the Debtor's reorganization plans. As a result, while the Purchaser is cognizant of the Debtor's Chapter 11 case and reorganization plans, it is not the driving force for this transaction. In fact, the existence of an absolute deadline in this case could adversely affect the Debtor's negotiations. As set forth herein, the purchase and sale contracts have been drafted and circulated, and the Debtor realistically believes that both contracts will go "hard" and close within the next 60 days.

13.     In this case, a 60 day continuance of the Disclosure Statement hearing, and an extension of the exclusivity period for 60 days thereafter, should enable the contracts to be

finalized and executed.  The creditors will not be harmed in any manner by this additional delay. The secured creditors are completely adequately protected, and the Debtor's principal is demonstrating abundant good faith by personally funding the adequate protection payment shortfalls in excess of $10,000.00 a month.  As set forth above, several of the factors considered by *Hoffinger* and the cases cited are present, including, *inter alia*: the existence of good faith progress toward reorganization; that the Debtor is continuing to pay its debts as they come due (including tax payments to Sabadell); the continued payment of, and provision for, adequate protection to the secured creditors; the Debtor's reasonable prospects for filing a viable and confirmable Plan; the public interest in the development of the RJD Properties; and Debtor's good faith efforts.

### III.  CONCLUSION

WHEREFORE, Debtor, Riverwalk Jacksonville Development, LLC, respectfully requests this Court enter an Order: (1) granting the present Motion; ; (2) continuing the January 14, 2015 Disclosure Statement hearing for 60 days; (3) finding that cause exists to extend the exclusivity period for Debtor to solicit acceptances of its Plan of Reorganization for an additional 60 days after the rescheduled Disclosure Statement hearing; and (4) granting such further relief the Court deems necessary and appropriate.

//

//

//

//

//

//

//

AARONSON SCHANTZ, P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | Fax 305.424.9336

Respectfully submitted,

**Aaronson Schantz P.A.**

s/Geoffrey S. Aaronson
Geoffrey S. Aaronson, Esq.
Florida Bar No. 349623
gaaronson@aspalaw.com
Tamara D. McKeown, Esq.
Florida Bar No. 773247
tmckeown@aspalaw.com
Miami Tower, 27th Floor
100 SE 2nd Street
Miami, Florida 33131
Phone: 786.594.3000
Fax:    305.424.9336
*Attorneys for Debtor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 9, 2015, the foregoing was served by the Court's CM/ECF service on the U.S. Trustee and all electronic notice parties, and by regular U.S. Mail on all parties on the attached mail list.

s/Geoffrey S. Aaronson
Geoffrey S. Aaronson

10

AARONSON SCHANTZ, P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

Stevan J. Pardo, Esq.
200 S.E.. 1st St.
Suite 700
Miami, FL 33131-1909







Augusto Vidaurreta
744 Lake Avenue Drive
Miami Beach, FL 33140

Brett Engelhard
10781 NW 5th Street
Plantation, FL 33324-1518

CHLN, Inc.
c/o Landry's, Inc.
1510 West Loop South
Houston, TX 77027-9505

Christy Hayes
8123 Noroad
Jacksonville, FL 32210-6329

Harold Gubnitsky
10422 Loan Star Place
Davie, FL 33328-1342

(p)IPFS CORPORATION
30 MONTGOMERY STREET
SUITE 1000
JERSEY CITY NJ 07302-3865

Internal Revenue Service
Centralized Insolvency Operation
P.O. Box 7346
Philadelphia, PA 19101-7346

JEA
21 West Church Street
Jacksonville, FL 32202-3158

JEA
PO Box 45047
Jacksonville, FL 32232-5047

Larry Gordon
10970 SW 69th Avenue
Miami, FL 33156-3931

Marcum, LLP
Attn: Michael Novak
One SE Third Avenue, 16th Floor
Miami, FL 33131-1709

Michael Corrigan, Tax Collector
Duval County Tax Collector
231 E. Forsyth St., Ste 130
Jacksonville, FL 32202-3380







Safetouch Security Systems
Attn: Amy Dode
9555 Sunbeam Center Drive
Jacksonville, FL 32257-6185

Sherrie Gibson
390 Plantation Landings Drive
Haines City, FL 33844-6354



Summit Electrical Contractors, Inc.
13790 Ranch Road
Jacksonville, FL 32218-9401

Tom Richardson
314 Mallard Rd.
Weston, FL 33327-1115





EXHIBIT "A"