**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov**

In re:                                          Case No.: 14-19672-LMI

RIVERWALK JACKSONVILLE                          Chapter 11
DEVELOPMENT, LLC,

      Debtor.

_____

**AMENDED DISCLOSURE STATEMENT IN CONNECTION WITH
<u>DEBTOR-IN-POSSESSION'S AMENDED PLAN OF REORGANIZATION</u>**

Dated:  March 13, 2015

Respectfully submitted

**Aaronson Schantz P.A.**
Miami Tower, 27th Floor
100 S.E. 2nd Street
Miami, Florida 33131
Tel. 786.594.3000
Fax 305.424.9336
gaaronson@aspalaw.com
tmckeown@aspalaw.com
*Attorneys for Debtor*

s/Geoffrey S. Aaronson_____
Geoffrey S. Aaronson, Esq.
Florida Bar No. 349623
Tamara D. McKeown, Esq.
Florida Bar No. 773247

# Contents

ARTICLE I:   INTRODUCTION ........................................................................................3

ARTICLE II:  DEFINITIONS ...........................................................................................5

ARTICLE III:   SUMMARY OF CHAPTER 11 ............................................................15

ARTICLE IV:   BACKGROUND INFORMATION ......................................................17

ARTICLE V: SUMMARY OF THE PLAN. .................................................................22

A.  Plan Summary ........................................................................................................22

B.  Administrative Claims and Operating Expenses ...................................................23

C.  Administrative Claimants. ......................................................................................23

D.  Classification and Treatment of Claims and Interests ...........................................24

E.  Voting for the Plan .................................................................................................28

F.  Means for Implementing Plan. ...............................................................................28

G.  U.S. Trustee Fees. ..................................................................................................28

H.  Executory Contracts and Unexpired Leases. .........................................................28

I.  Legal Proceedings...................................................................................................29

ARTICLE VI: ALTERNATIVES TO PLAN AND LIQUIDATION ANALYSIS ......30

ARTICLE VII: FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN .......30

ARTICLE VIII: EFFECTIVENESS OF THE PLAN ..................................................30

ARTICLE IX: ACCEPTANCE AND CONFIRMATION OF PLAN. ........................31

ARTICLE X: MISCELLANEOUS PROVISIONS. ....................................................33

A.  Injunction ...............................................................................................................33

B.  Terms of Injunctions or Stays ...............................................................................33

C.  Exculpation ............................................................................................................34

D.  No Waiver of Causes of Action.............................................................................34

E.  Allowance of Claims ..............................................................................................34

F.  Modification of Plan...............................................................................................34

G.  Solicitation .............................................................................................................34

ARTICLE XI: EFFECT OF CONFIRMATION OF PLAN .......................................35

A.  Discharge. ..............................................................................................................35

B.  Re-vesting of Property in the Debtor.....................................................................35

C.  Final Decree ...........................................................................................................35

ARTICLE XII: CONCLUSION ...................................................................................35

Aaronson Schantz P.A. | Miami Tower | 100 SE 2ND Street, 27TH Floor | Miami, Florida 33131 | Tel 786.594.3000 | Fax 305.424.9336

# ARTICLE I:   INTRODUCTION

The Debtor and Debtor-in-Possession, Riverwalk Jacksonville Development, LLC ("RJD" or "Debtor"), through counsel and pursuant to Sections 1121 and 1123 of the United States Bankruptcy Code and Rule 3016 of the Federal Rules of Bankruptcy Procedure, has proposed its Amended Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code (the "Plan"), for the resolution of Claims against and interests in the Debtor. [ECF 97]. The Debtor is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code. The Plan is summarized in this Amended Disclosure Statement (the "Disclosure Statement"). The Plan provides the means for distributing the funds collected by the Debtor to its Creditors.   All Allowed Claims are to be paid in full or cured under the Plan, and thus, there will be no voting for or against the Plan

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code, Bankruptcy Rule 3018, and the Plan, the Debtor reserves the right to further alter, amend, modify, revoke, or withdraw the Plan and this Disclosure Statement prior to the Effective Date.[1]

The Debtor files this Disclosure Statement in conformance with 11 U.S.C § 1125, but does not seek to solicit votes to accept or reject the Plan as all Allowed Claims are unimpaired and deemed to have accepted the Plan as a matter of law.  Notwithstanding the fact that there is no need to solicit acceptances for the Plan, this Disclosure Statement contains a discussion of, *inter alia*, the history of the Debtor, financial information regarding the Debtor and its assets, the major events of this Chapter 11 Case, treatment of Claims against and interests in the Debtor, preservation of litigation claims, risk factors, liquidation analysis, tax implications, alternatives to the Plan, a summary and analysis of this Plan, and certain related matters.

**THIS DISCLOSURE STATEMENT IS FILED FOR THE SOLE PURPOSE OF MEETING THE REQUIREMENTS OF 11 U.S.C. § 1125.  ALL ALLOWED CLAIMS ARE PROPOSED EITHER TO BE CURED OR PAID IN FULL, AND THUS, ARE UNIMPAIRED AND DEEMED TO HAVE ACCEPTED THE PLAN AS A MATTER OF LAW PURSUANT TO 11 U.S.C. § 1126(f).  ACCORDINGLY, THIS DISCLOSURE STATEMENT SEEKS ONLY TO INFORM CREDITORS AND PARTIES IN INTEREST OF THE CONTENTS OF THE PLAN.  NO FURTHER ACTION IS REQUIRED.**

**THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT CONCERNING THE FINANCIAL CONDITION OF THE DEBTOR'S BANKRUPTCY ESTATE IS BASED UPON FINANCIAL AND OTHER INFORMATION DEVELOPED BY THE DEBTOR'S MANAGEMENT AND ITS PROFESSIONALS FROM THE DEBTOR'S RECORDS.  THE INFORMATION IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECT TO AN AUDIT, AND THEREFORE, MAY BE SUBJECT TO ERROR.  SOME FINANCIAL INFORMATION MAY HAVE BEEN INADVERTENTLY OVERLOOKED IN THE PREPARATION OF THIS DISCLOSURE STATEMENT, BUT IT IS BELIEVED THE DISCLOSURE STATEMENT IS GENERALLY ACCURATE.**

---

[1]  Unless otherwise stated herein, capitalized terms shall have the same meaning ascribed to them in the Plan.

Aaronson Schantz P.A. | Miami Tower | 100 SE 2ND Street, 27TH Floor | Miami, Florida 33131 | Tel 786.594.3000 | Fax 305.424.9336

For a summary description of the treatment of each Class of Claims and Interests and the estimated value of the Distribution to each Class of Claims and Interests, see Article V.

The Court has scheduled a hearing to consider confirmation of the Plan for _____, 2015, at _____ a.m./p.m. in the United States Bankruptcy Court, C. Clyde Atkins United States Courthouse, 301 N. Miami Avenue, Courtroom 8, Miami, Florida, 33128 (the "Confirmation Hearing"). The Court has directed that objections to confirmation of the Plan, if any, be filed with the Court and served so as to actually be received by various parties on or before _____, 2015. The date of the Confirmation Hearing may be adjourned from time to time, without further notice. The Confirmation Hearing may be consolidated with the Disclosure Hearing.

**Objections to the Plan.**

The Bankruptcy Court has established _____, 2015, as the latest date on which all objections to the confirmation of the Plan must be **actually received** at the following address: Clerk of the Court, United States Bankruptcy Court, C. Clyde Atkins United States Courthouse, 301 N. Miami Avenue, Room 150, Miami, Florida, 33128, and served upon the Debtor (1) by regular mail at 200 S.E. 1st Street, Suite 700, Miami, Florida 33131; and upon the Debtor's counsel, at: Geoffrey S. Aaronson, Esq. and Tamara D. McKeown, Esq., Aaronson Schantz P.A., Miami Tower, 100 S.E. 2nd Street, 27th Floor, Miami, Florida 33131, with email copies to: gaaronson@aspalaw.com; and tmckeown@aspalaw.com

---

**The Objection Deadline is _____, 2015 at 4:00 p.m.**

**(Prevailing Eastern Time)**

---

Section 1128 of the Bankruptcy Code requires a bankruptcy court to hold a hearing on the confirmation of a plan of reorganization under Chapter 11. Section 1128 of the Bankruptcy Code also provides that any party in interest may object to confirmation of the plan.

---

**The Confirmation Hearing will be held on _____, 2015 at ___:00 a.m./p.m.**

**before the Honorable Laurel M. Isicoff, United States Bankruptcy Judge**

**in the United States Bankruptcy Court for the Southern District of Florida, Miami Division**

**United States Bankruptcy Court, C. Clyde Atkins United States Courthouse**

**301 N. Miami Avenue, Courtroom 8, Miami, Florida 33128**

**(Prevailing Eastern Time)**

---

Aaronson Schantz P.A. | Miami Tower | 100 SE 2nd Street, 27th Floor | Miami, Florida 33131 | Tel 786.594.3000 | Fax 305.424.9336

**THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUBMITTED BY DEBTOR'S MANAGEMENT, UNLESS SPECIFICALLY STATED TO BE FROM OTHER SOURCES. NO REPRESENTATIONS CONCERNING THE DEBTOR, OTHER THAN THOSE SET FORTH HEREIN, ARE AUTHORIZED BY THE DEBTOR.**

## ARTICLE II:  DEFINITIONS

The defined terms used in Article II of the Plan shall have the same meanings in this Disclosure Statement. Those definitions, as set forth in the Plan, are incorporated herein for sake of convenience.

2.1    Administrative Creditor. Any Creditor entitled to payment of an Administrative Expense Claim.

2.1.1    Administrative Expense Claim. Any Claim for payment of any administrative cost or expense of administering this Chapter 11 case allowed under Section 503(b) of the Bankruptcy Code and otherwise entitled to priority under §507(a)(1) of the Bankruptcy Code, including, *inter alia*, any actual and necessary expenses of preserving the Debtor's estate; any actual and necessary expenses of operating the business of the Debtor, including loans or other advances to the Debtor-in-Possession, and all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under 11 U.S.C. § 330; and any fees or charges assessed against the Debtor's estate under 28 U.S.C.  1930.

2.2    Alliance.  Alliance Realty Partners LLC, which is an affiliate of Alliance Residential Company, one of the largest private U.S. multifamily companies, with offices throughout the West, Southwest, South-Central, Southeast, Mid-Atlantic and Northeast.  Alliance Residential Company states that it has invested more than $3 billion in real estate and manages a $9 billion portfolio, utilizing local leadership with a comprehensive national support infrastructure.  The Debtor has been negotiating a contract with Alliance for the sale and purchase of the Sale Parcel for $6.5 million, but as of the filing of this Plan, there are remaining contract terms which have not yet been finalized.

2.3    Allowed Claim. Any Claim against the Debtor, proof of which was filed on or before the claims bar date pursuant to Bankruptcy Rule 3003 or which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Bankruptcy Code or the Bankruptcy Rules, or as to which any objection has been determined by a Final Order.  Unless otherwise specified herein, the term "Allowed Claim" shall not include interest on the principal amount of such Claim from and after the Petition Date.

2.4    Allowed Equity Interest. Any Allowed Equity Interest in the Debtor, either scheduled by the Debtor, or filed pursuant to Bankruptcy Rule 3003 and which has resulted in an Allowed interest.

5

AARONSON SCHANTZ P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

2.5     Allowed Priority Claim. Any Allowed Claim of a creditor which is designated a priority claim order pursuant to Section 507 of the Bankruptcy Code.

2.6     Allowed Secured Claim. Any Allowed Claim of a creditor secured by a lien on property in which the Debtor has an interest in accordance with Section 506(a) of the Bankruptcy Code.

2.7     Allowed Unsecured Claim. Any Allowed Claim not otherwise allowed as an Administrative Expense Claim, Priority Claim, or Secured Claim.

2.8     ASPA. Aaronson Schantz Beiley P.A., the Debtor's attorneys.

2.9     Assets. Collectively, all of the Property of the Debtor's Estate (including, *inter alia*, all tangible and intangible assets, property, interests, and Avoidance Actions), as defined by Section 541 of the Bankruptcy Code, wherever situated as such properties exist on the Effective Date or thereafter.

2.10    Auction Sale. A commercial public auction sale of the Sale Parcel, to be held after a sixty (60) day marketing period in the event that the Debtor does not obtain an executed Private Sale Contract within the Private Sale Contract Period. In the event of an Auction Sale, the Debtor will separately move the Bankruptcy Court for authority to retain an auctioneer.

2.11    Avoidance Action. Any claim or cause of action of the Estate arising out of or maintainable pursuant to fi502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

2.12    Ballot. Collectively, each of the ballot forms distributed with the Disclosure Statement to Holders of Claims included in the Classes that are Impaired under this Plan and are otherwise entitled to vote on this Plan. This Plan does not include any Impaired Classes, and therefore no Ballots are being distributed to Allowed Creditors.

2.13    Bankruptcy Case. This Chapter 11 case initiated by the Debtor's filing of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code on the Petition Date.

2.14    Bankruptcy Code. The United States Bankruptcy Code, as amended, and as set forth in Section 101, *et seq.*, of Title 11, United States Code.

2.15    Bankruptcy Court. The United States Bankruptcy Court for the Southern District of Florida, having jurisdiction over this Bankruptcy Case.

2.16    Bankruptcy Rules. The Federal Rules of Bankruptcy Procedure, as amended and as applicable to cases pending before the Bankruptcy Court.

2.17   <u>Business Day</u>.  Any day on which the commercial banks are required to be open for business in Miami, Florida.

2.18   <u>Chapter 11 Case</u>. This Chapter 11 case which commenced on April 28, 2014, in which the Debtor is Riverwalk Jacksonville Development, LLC.

2.19   <u>Chart House Lease</u>.  The February 3, 1980 ground lease between predecessors of the Debtor and predecessors of the present occupant of the premises, CHLN, Inc. c/o Landry's, Inc. d/b/a The Chart House Restaurant. The Debtor believes that this lease was terminated in or about July, 2002 due to the unauthorized and unapproved assignment of the Lease to Landry's.  The lease default issue remains pending in the Circuit Court for the Fourth Judicial Circuit in and for Duval County, Florida (Case No. 16-2007-CA-000443-CV-G).  This Plan provides for the rejection of the lease under 11 U.S.C. § 365 due to the Pre-Petition Lease Default.

2.20   <u>Chart House Litigation</u>.  The declaratory judgment action commenced by the Debtor on January 16, 2007 in the Circuit Court for the Fourth Judicial Circuit in and for Duval County, Florida, Case No. 16-2007-CA-000443-CV-G, seeking a judicial determination of the rights and obligations of the parties to the Chart House Lease.  This action remains unresolved, and the Debtor is seeking to resolve the Chart House Lease termination in this Court.

2.21   <u>Chart House Restaurant</u>.  A current business tenant on the Debtor's Riverplace Parcel pursuant to the disputed Chart House Lease.

2.22   <u>CHNL, Inc</u>. or <u>CHNL.</u> The owner of the Chart House Restaurant presently occupying a portion of the Riverwalk Parcel as a business tenant pursuant to the disputed Chart House Lease.

2.23   <u>Claim</u>.  Any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, un-matured, disputed, undisputed, legal, equitable, secured or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, un-matured, disputed, undisputed, secured, or unsecured.

2.24   <u>Claims Objection Deadline</u>. Thirty days before the Confirmation Hearing shall be the last day by which the Debtor or any other interested party may file an Objection to the Allowance of any Claim.

2.25   <u>Closing</u>. The closing of the Transaction which will fund the Plan.

2.26   <u>Code</u>.  The United States Bankrptcy Code, 11 U.S.C. § 101 et. seq.

2.27   <u>Confirmation</u>.  The confirmation of this Plan by the Bankruptcy Court pursuant to the Bankruptcy Code.

AARONSON SCHANTZ P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

2.28    Confirmation Date. The date upon which the Bankruptcy Court, District Court, or other court of competent jurisdiction shall enter an Order confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code, or if the operation of such Order is stayed, the date upon which such stay expires or is vacated.

2.29    Confirmation Hearing.    The hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under § 1128 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

2.30    Confirmation Order.  An Order entered by the Bankruptcy Court, District Court, or other court of competent jurisdiction confirming this Plan.

2.31    Contested Claim. Any claim as to which the Debtor or any other party(ies) in interest have interposed an objection in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection has not been withdrawn or determined by a Final Order.

2.32    Consumation Date. The date on which the Confirmation Order becomes a Final Order.

2.33    Court.  The United States Bankruptcy Court for the Southern District of Florida (Miami Division) or any other Court, appellate or otherwise that properly exercises jurisdiction over this Chapter 11 Case.

2.34    Creditor.  Any person that is the holder of a claim against the Debtor that arose on or before the Petition Date, or a claim against the Debtor's estate of any kind, as specified in 11 U.S.C. §§502(g), 502(h), and/or 502(i).

2.35    Debtor.  Riverwalk Jacksonville Development, LLC.

2.36    Debtor-in-Possession.  The Debtor, Riverwalk Jacksonville Development, LLC.

2.37    Default.  A failure by the Debtor to pay Allowed Claim(s) required to be paid by the terms of a confirmed Plan.  The holder of such Allowed Claim(s) may send written notice to the Debtor by certified mail at the Notice addresses of record for Debtor, as reflected in this Plan. The Debtor shall have twenty (20) days from the Debtor's receipt of the notice of default to cure such default.  If the Debtor does not cure such default within the twenty day period, it shall be deemed a Default Event. If there is a dispute as to whether a Default Event has occurred, such dispute may be resolved by the Bankruptcy Court on short notice.

2.38    Default Event. An uncured Default pursuant to Paragraph 2.35.

2.39    DIP Account.    The post-petition Debtor-in-Possession bank account of Riverwalk Jacksonville Development, LLC.

2.40    Disallowed Claim. Any Claim or any portion thereof that (i) has been disallowed by a Final Order, (ii) is listed in any of the Debtor's Schedules at zero, unknown, contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established

8

AARONSON SCHANTZ P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in the Debtor's Schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

2.41    Disclosure Statement. The Amended Disclosure Statement for this Amended Plan of Reorganization filed by Debtor, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code, Bankruptcy Rule 3017 and Rule 3017-1 of the Local Rules, as such Disclosure Statement may be further amended, modified or supplemented from time to time.

2.42    Disputed Claim. Any Claim or portion thereof which is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

2.43    Distribution. The delivery of payments to Allowed Creditor Claims. There shall be a single Distribution paying all approved Administrative Claims and Allowed Creditor Claims on the Effective Date.

2.44    Distribution Date. The date on which all Distributions shall be made pursuant to the Plan. The Distribution Date is the same as the Effective Date.

2.45    Distribution Funds. All Distributions to Creditors under this Plan.

2.46    District Court. The United States District Court for the Southern District of Florida.

2.47    East Parking Lot Parcel. The Debtor's Property located at 0 Prudential Drive (Folio Number 1122668.0000), Jacksonville, Florida 32207, and encumbered by the U.S. Century Mortgage. A portion of the East Parking Lot Parcel is presently subject to a parking easement by the Wyndham Hotel and Convention Center. See attached Exhibit "A."

2.48    Effective Date. The Effective Date shall be the date of the Closing, on which all Distributions shall be made pursuant to the Plan. The Effective Date is the same as the Distribution Date.

2.49    Engelhard. Brett Engelhard, one of the Debtor's Members and the owner of an 8.5% Membership Interest in the Debtor.

2.50    Equity Holders. The RJD Members: Augusto Vidaurreta, Brett Engelhard, Harold Gubnitsky, Larry Gordon, the Pardo Family Trust, Stevan and Adrienne Pardo, TBE, and Tom Richardson.

2.51    Equity Interest. Any equity interest in the Debtor, as represented by Membership Interests.

2.52    Estate. The estate created by the commencement of this Bankruptcy Case pursuant to the Bankruptcy Code, including, *inter alia*, any and all rights, powers, and privileges of such

AARONSON SCHANTZ P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

Debtor and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that such Debtor or such Estate shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the commencement of the Bankruptcy Case, whether by virtue of §§541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise.

2.53   <u>Executory Contract</u>. Any executory contract, unexpired lease or purported executory contract or unexpired lease to which the Debtor is a party.

2.54   <u>Existing Organizational Documents.</u>  The articles of incorporation, and any other charter documents legally forming and/or organizing the Debtor, and all by-laws as may have been amended and/or restated up to, and in existence as of, the Petition Date. Except to the extent amended or restated by any applicable new Organizational Documents, such Existing Organizational Documents will remain in full force and effect.

2.55   <u>Final Order</u>.  Any order or judgment of the Bankruptcy Court, the District Court, or any other court of competent jurisdiction including the Confirmation Order, as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely.  In the case of an order of the Bankruptcy Court, the time for appeal shall be the time permitted for an appeal to the District Court.

2.56   <u>Gordon</u>.  Larry Gordon, a Member of the Debtor and the owner of a five percent (5%) Membership Interest in the Debtor.

2.57   <u>Gubnitsky</u>.  Harold Gubnitsky, a Member of the Debtor and the owner of a two percent (2%) Membership Interest in the Debtor.

2.58   <u>Holder</u>. Any holder of a Claim or Equity Interest, as applicable.

2.59   <u>Impaired Claim</u>. Any class of creditors whose claims are impaired by payments as proposed in this Plan, in accordance with 11 U.S.C. § 1124.

2.60   <u>International House of Prayer</u>.  A current business tenant on the Debtor's Riverplace Parcel.

2.61   <u>Lien</u>. A charge against or interest in property to secure payment of a debt or performance, as that term as described in §101(37) of the Bankruptcy Code.

2.62   <u>Local Rule</u>.  One of the Local Rules of the United States Bankruptcy Court for the Southern District of Florida.

2.63   <u>Manager</u>.  The Debtor's manager, Stevan J. Pardo, who is also a Member of the Debtor TBE with his wife, Adrienne Pardo.

2.64   <u>Member</u>.  The owners and holders of Membership Interests in the Debtor.

AARONSON SCHANTZ P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

2.65 <u>Membership Interest</u>. One or more of the outstanding membership interests in the Debtor, a Florida Limited Liability Company.

2.66 <u>Objection to Claim</u>.  An objection to claim pursuant to Bankruptcy Rule 3007 and Local Rule 3007-1.

2.67 <u>Pardo</u>.  Stevan J. Pardo, the Manager of the Debtor and a Member of the Debtor TBE with his wife, Adrienne Pardo.

2.68 <u>Pardo Family Trust</u>.  A Member of the Debtor and the owner of a five percent (5%) Membership Interest in the Debtor.

2.69 <u>Person</u>.  An individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in § 101(27) of the Bankruptcy Code) or other entity.

2.70 <u>Petition Date</u>.  April 28, 2014, the date on which Order for Relief was entered by the Court, which commenced this Chapter 11 case.

2.71 <u>Plan or Plan of Reorganization</u>. This Amended Plan of Reorganization, either in its present form or as it may hereafter be corrected, amended, supplemented, restated, or modified from time to time.

2.72 <u>Priority Claim</u>. Any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, to the extent entitled to priority in payment under 11 U.S.C. § 507(a).

2.73 <u>Priority Creditor</u>.  Any Creditor that is the holder of a Priority Claim.

2.74 <u>Priority Non-Tax Claim</u>. Any claim to the extent entitled to priority in payment under 11 U.S.C. § 507(a)(3), (4), (5), (6), or (7).

2.75 <u>Priority Tax Claim</u>. Any claim to the extent entitled to priority in payment under 11 U.S.C. §§ 507(a)(3), (4), (5), (6), or (7).

2.76 <u>Private Sale</u>.  A private sale of the Sale Parcel by the Debtor to Alliance, or another qualified purchaser.

2.77 <u>Private Sale Contract</u>.  A contract with Alliance, or another qualified purchaser, for the Debtor's sale of the Sale Parcel on Reasonable Commercial Terms.

2.78 <u>Private Sale Contract Period</u>.  A period of time not greater than 75 days after entry of the Final Confirmation Order for the Debtor to execute a Private Sale Contract for the sale of the Sale Parcel to Alliance, or another qualified purchaser. Should the Debtor enter into a Private Sale Contract, the Private Sale Contract shall be subject to Reasonable Commercial Terms.  Debtor shall close the Private Sale pursuant to the terms of the

11

AARONSON SCHANTZ P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

contract, but not more than 75 days after the expiration of all inspection and due diligence periods.

2.79    <u>Professional Compensation</u>. Any amounts that the Bankruptcy Court allows pursuant to § 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals employed by the Debtor, and any amounts the Bankruptcy Court allows pursuant to §§ 503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Case.

2.80    <u>Prudential Parcel</u>.  The Debtor's waterfront Property located at 1643 Prudential Drive, Jacksonville, Florida 32207 (the Eastern portion of Folio Number 1122677.0000).  The Prudential Parcel provides parking for the Duval County School Board, as well as business tenants located on the Debtor's Riverplace Parcel and other area businesses.  The Prudential Parcel is unencumbered. See Exhibits A and B.

2.81    <u>Public Auction Sale</u>.  If a Private Sale Contract has not been executed by the Debtor and Alliance or another qualified purchaser for the Sale Parcel within 75 days immediately following entry of the Final Confirmation Order, then the Sale Parcel will be marketed for 60 days and then sold at an Auction Sale.  In such instance, the Debtor's Members will pay the marketing costs for the Auction Sale not to exceed $25,000.00 and will have a first lien on the sale proceeds to secure the reimbursement of the marketing costs.

2.82    <u>RJD</u>.  The Debtor, Riverwalk Jacksonville Development, LLC.

2.83    <u>RJD Properties</u>.  The four parcels of real property owned by the Debtor, collectively the Riverplace Parcel, the Prudential Parcel, the East Parking Lot Parcel and the West Parking Lot Parcel.

2.84    <u>Real Property</u>. The RJD Properties, including all easements, concurrency entitlements, use allowances, and all other regulatory, zoning, land use and incorporeal hereditaments in manner associated with said real property.

2.85    <u>Rejected Contract</u>. Any unexpired lease or executory contract or purported lease or executory contract not assumed in the Plan.

2.86    <u>Reorganized Debtor</u>.  The post-Confirmation Debtor who will have all rights and liabilities as set forth by this Plan.

2.87    <u>Reasonable Commercial Terms</u>. All reasonable and customary commercial terms with regard to the Sale Contract, including a commercially reasonable time period to conduct due diligence (not to exceed 75 days) and thereafter to obtain site plan approval (not to exceed 180 days), and a reasonable time period thereafter to close but not greater than 75 days.

2.88    <u>Retained Action</u>. Any claim, cause of action, right of action, suit or proceeding, whether in law or in equity, whether known or unknown, which the Debtor or the Estate may hold against any Person, including CHNL, Inc., and *inter alia*: (i) any and all claims that arose

12

Aaronson Schantz P.A. | Miami Tower | 100 SE 2ND Street, 27TH Floor | Miami, Florida 33131 | Tel 786.594.3000 | Fax 305.424.9336

before, on or after the Petition Date; (ii) claims and causes of action against any Persons for failure to pay for products or services provided or rendered by the Debtor; (iii) claims and causes of action seeking the recovery of the Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's business, including without limitation, claim overpayments and tax refunds; and (iv) all causes of action that are Avoidance Actions.

2.89    <u>Richardson</u>.  Tom Richardson, a Member of the Debtor and the owner of an eight percent (8%) Membership Interest in the Debtor.

2.90    <u>Riverplace Parcel</u>.    The Debtor's property located at 1501 Riverplace Boulevard, Jacksonville, Florida 32207 (the Western portion of Folio Number 1122677.0000) and encumbered by the Sabadell Mortgage.  The Chart House Restaurant and International House of Prayer are business tenants of the Debtor on the Riverplace Parcel, and five other commercial office spaces are presently vacant. A portion of the Riverplace Parcel is subject to use for parking by the Chart House Restaurant and also provides parking for the International House of Prayer.

2.91    <u>Sabadell</u>.  Sabadell United Bank, N.A., which holds the first mortgage on the Riverplace Parcel.

2.92    <u>Sabadell Litigation</u>.  The foreclosure action commenced by Sabadell United Bank, N.A. against the Debtor's Riverplace Parcel  on February 7, 2014 in the Circuit Court for the Fourth Judicial Circuit in and for Duval County, Florida, Case No. 2014-CA-964.

2.93    <u>Sabadell Mortgage</u>.  The first mortgage held by Sabadell on the Riverplace Parcel in the approximate amount of $3,877,734.40.

2.94    <u>Sabadell Note</u>.  The promissory note secured by the Sabadell Mortgage.

2.95    <u>Sale Parcel</u>.  The portion of the RJD Properties to be sold pursuant to the Private Sale Contract, which includes the entirety of the unencumbered Prudential Parcel combined with the Eastern portion of the Eastern Parking Lot Parcel, which is encumbered by the U.S. Century Mortgage, all as reflected on Exhibit "A" to the Plan and Disclosure Statement.

2.96    <u>Sale Proceeds.</u>  The total sale proceeds received by the Debtor either from the Private Sale or an Auction Sale of the Sale Parcel, after payment of real estate taxes, commissions, closing fees including a reasonable attorney closing fee, costs, and all related costs and expenses customary in a commercial real estate transaction or auction sale.  The Plan will be funded by Sale Proceeds.

2.97    <u>Schedules</u>. The Schedules of Assets and Liabilities the Debtor filed in the Bankruptcy Case, as they may be amended from time to time in accordance with Bankruptcy Rule 1009.

Aaronson Schantz P.A. | Miami Tower | 100 SE 2ND Street, 27TH Floor | Miami, Florida 33131 | Tel 786.594.3000 | Fax 305.424.9336

2.98    Secured Claim. Any Claim against the Debtor to the extent secured by a Lien on any property of the Debtor on the Petition Date, including, *inter alia*, the Riverplace Parcel, the East Parking Lot Parcel and the West Parking Lot Parcel, to the extent of the value of said property as provided in § 506(a) of the Bankruptcy Code.

2.99    Secured Creditor. Any creditor that is the holder of a Secured Claim.

2.100   Stevan Pardo and Adrienne Pardo, TBE.  Stevan J. Pardo and his wife, Adrienne Pardo, TBE, a Member of the Debtor and the owner of a forty-six and 65/100s percent (46.65%) Membership Interest in the Debtor.

2.101   Subordinated Claim.  Any Unsecured Claim that is subordinated in priority to all other Allowed Unsecured Claims pursuant to the provisions of § 510 of the Bankruptcy Code or other applicable law.

2.102   Substantial Consummation. Substantial Consummation shall encompass the definition provided is § 1101(2) of the Bankruptcy Code and will be deemed to have occurred upon the Closing of the Sale Parcel.

2.103   TBE.  Ownership of a property interest as tenants by the entirety.  A TBE interest is a joint interest with rights of survivorship and other attributes between a husband and wife.

2.104   Tax Creditor.  Any Creditor that holds a tax claim.

2.105   Time. Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Florida, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

2.106   Transaction. The Debtor's consummated sale of the Sale Parcel.

2.107   Ultimately Allowed Claim. Any Contested Claim that becomes an Allowed Claim.

2.108    Unencumbered Parcel.  The Prudential Parcel which comprises a portion of the Sale Parcel.

2.109   Unimpaired Claim. Any class of Creditors whose Claims are not impaired under the Plan in accordance with § 1124 of the Bankruptcy Code.

2.110   Unsecured Claim. Any Claim other than a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Expense Claim.

2.111   Unsecured Creditor. Any creditor that is the holder of an Unsecured Claim.

2.112   U.S. Century.  U.S. Century Bank, which holds a first mortgage on the West Parking Lot Parcel and East Parking Lot Parcel.

2.113  <u>U.S. Century Mortgage</u>.  The first mortgage held by U.S. Century on the West Parking Lot Parcel and East Parking Lot Parcel in the approximate amount of $1,560,517.00.

2.114  <u>U.S. Century Note</u>.  The promissory note secured by the U.S. Century Mortgage.

2.115  <u>Vidaurreta</u>.  Augusto Vidaurreta, a Member of the Debtor and the owner of a twenty-four and 85/100s percent (24.85%) Membership Interest in the Debtor.

2.116  <u>West Parking Lot Parcel</u>.  The Debtor's Property located at 0 Prudential Drive (Folio Number 1122678.0000), Jacksonville, Florida, 32207, and encumbered by the U.S. Century Mortgage.  The West Parking Lot Parcel provides parking for business tenants located on the Debtor's Riverplace Parcel, as well as other area businesses.

2.117  <u>Wyndham Property</u>. The Wyndham Hotel and Convention Center, located on a parcel of real property in the center of, and surrounded by, the RJD Properties.

# ARTICLE III:  SUMMARY OF CHAPTER 11

**1.**  **Property of the Estate.**  The commencement of a Chapter 11 bankruptcy case creates an estate comprising all the legal and equitable interests of the Debtor in property as of the date the petition is filed.  Sections 1101, 1107, and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "Debtor-in-Possession" unless the bankruptcy court orders the appointment of a trustee or custodian.  No trustee or custodian has been appointed in this case.

**2.**  **Automatic Stay.**  Pursuant to Section 362 of the Bankruptcy Code, the filing of a Chapter 11 petition operates as an automatic stay applicable to all entities of various actions, including actions to collect pre-petition claims from the Debtor or otherwise interfere with its Property or business, unless otherwise Ordered or permitted by the Bankruptcy Court.

**3.**  **Plan of Reorganization.**  The Plan sets forth the terms of the Debtor's financial reorganization. The Bankruptcy Code provides that only a debtor may file a plan within a certain period after filing a bankruptcy petition (the "Exclusivity Period").  In this case, the Debtor has sought two extensions of the Exclusivity Period, seeking to extend the Exclusivity Period until January 31, 2015.  Upon motion by the Debtor, the Court continued the Disclosure Statement hearing scheduled for January 25, 2015 to March 18, 2015, and extended the Debtor's exclusivity period to obtain acceptances of its Plan for 60 days after the continued Disclosure Statement hearing date.  This is the Debtor's first Amended Plan of Reorganization.

**4.**  **Disclosure Statement.**  An acceptance or rejection of a Plan may not be solicited after the commencement of a Chapter 11 case from the holder of a claim or equity interest unless, at the time of or before such solicitation, there is transmitted to such holder, the plan and a written disclosure statement approved by the Court as "containing adequate information," after notice and a hearing on the contents therein.  "Adequate information" means information of a kind, and in

15

AARONSON SCHANTZ P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records that would enable a hypothetical, reasonable investor typical of holders of claims or interests of the relevant Class, to make an informed judgment about the Plan. In the present matter, no acceptances of the Plan by any Class of Claims is required as all Allowed Claims of the Debtor are proposed either to be cured or paid in full pursuant to the terms of the Plan.

**5.    Voting**

**A.    Who May Vote or Object?**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met. Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A Creditor or Equity Interest Holder has a right to vote for or against the Plan only if that Creditor or Equity Interest Holder has a Claim or Equity Interest that is both: (a) allowed (or allowed for voting purposes); and (b) impaired.

**B.    What Is an Allowed Claim or an Allowed Equity Interest?**

Only the Holder of an Allowed Claim or an Allowed Equity Interest has the right to vote on the Plan.    Generally, a Claim or Equity Interest is allowed if either: (a) the Debtor has scheduled the Claim or Equity Interest on its Schedules, unless the Claim has been scheduled as disputed, contingent, or unliquidated; or (b) the Creditor has filed a Proof of Claim or Equity Interest, and no objection has been filed to such proof of Claim or Equity Interest. When a Claim or Equity Interest is not allowed, the Holder of the Claim or Equity Interest cannot vote unless, after notice and hearing, the Court either overrules the objection or allows the Claim or Equity Interest for voting purposes pursuant to Rule 3018(a) of the Bankruptcy Rules.

In this case, the deadline for filing a proof of claim for non-governmental entities expired on September 9, 2014. The deadline for governmental agencies to file a proof of claim was October 27, 2014.

**C.    What Is an Impaired Claim or Impaired Equity Interest?**

As noted above, the Holder of an Allowed Claim or Equity Interest has the right to vote only if it is in a Class that is "impaired" under the Plan. As provided in §1124 of the Bankruptcy Code, a Class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that Class. In this case, the Plan Proponents believe that there are no impaired classes under the Plan because the debtor will either cure or satisfy the Sabadell and U.S. Century Mortgages and all other Creditors will be paid their Allowed Claims in full on the Effective Date of the Plan. Thus, no Holders of any Claims in any Class of Creditors is entitled vote to accept or reject the Plan.

**D.    Who is NOT Entitled to Vote?**

The Holders of the following types of Claims and/or Equity Interests are not entitled to vote to accept or reject the Plan:

AARONSON SCHANTZ P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

1.    Holders of any Claim or Equity Interest that has been disallowed by an order of the Court;

2.    Holders of any other Claim or Equity Interest that are not Allowed Claims or Allowed "Equity Interests" (as defined in the Plan), unless they have been "allowed" for voting purposes;

3.    Holders of any Claim or Equity Interest in unimpaired Classes;

4.    Holders of Administrative Expense Claims;

Accordingly, because all Creditors either will have their Allowed Claims cured or paid in full on the Effective Date under this Plan, no Creditors are entitled to vote on the Plan, and all classes are deemed as a matter of law to have accepted the Plan.

**6.    Confirmation Standards.**

**1.    Generally.**  The Plan Proponent must meet all applicable requirements of Section 1129(a) of the Bankruptcy Code (except Section 1129(a)(8), if the Plan Proponent proposes to seek confirmation of the Plan under the Bankruptcy Code's "Cramdown Provisions" found in Section 1129(b)).  These requirements include, among other things, that: (a) the Plan complies with applicable provisions of Title 11, United States Code and other applicable law;  (b) the Plan is proposed in good faith; (c) at least one impaired Class of Claims accepts the Plan (without counting votes of insiders); (d) the Plan distributes to each Creditor and Equity Interest Holder at least as much as the creditor or equity holder would receive in a chapter 7 liquidation case, unless the Creditor or Equity Interest Holder votes to accept the Plan; and (e) the Plan is feasible.  These requirements are not the only requirements listed in Section 1129 of the Bankruptcy Code, and they are not the only requirements for Confirmation.

**2.    Liquidation Analysis.**  To confirm the Plan, the Court must find that all Creditors and Equity Interest Holders who do not accept the Plan will receive at least as much under the Plan as such Creditors and/or Equity Interest Holders would receive in a liquidation under Chapter 7 of the Bankruptcy Code.

**3.    Feasibility.** The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor (or any successor to the Debtor), unless such liquidation or reorganization is proposed in the Plan.

## ARTICLE IV:   BACKGROUND INFORMATION

A description of the background information in this Case is set forth in Article III of the Plan and is incorporated herein for sake of convenience.

AARONSON SCHANTZ P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

Riverwalk Jacksonville Development, LLC ("RJD") is a Florida limited liability company, which owns four parcels of real property located in the areas surrounding the Wyndham Hotel and Convention Center ("Wyndham") in and about the area known as the "Jacksonville Riverwalk" in downtown Jacksonville, along the south side of the St. John's River. RJD comprises the Riverplace Parcel, the Prudential Parcel, the East Parking Lot Parcel and the West Parking Lot Parcel. See Exhibits A and B attached hereto. The RJD Properties comprise approximately 10.85 acres, and constitute prime commercial space in Jacksonville, Florida. Two of the parcels, the Riverplace Parcel and the Prudential Parcel, front the St. John's River on the north side of the Wyndham Property and abut the Jacksonville River Walk. The other two parcels, the East Parking Lot Parcel and the West Parking Lot Parcel, front Prudential Drive on the southeast and southwest sides of the Wyndham.

The East Parking Lot Parcel was purchased in 2004 and the West Parking Lot Parcel was purchased in 2001. These Parcels, on the southeast and southwest sides of the Wyndham respectively, have intermittently provided parking for the Wyndham Property, the Debtor's business tenants, and other local businesses. See Exhibits A and B. The Riverplace Parcel and Prudential Parcel were transferred to the Debtor in December, 2006, by a related company. All of the RJD Properties and the Debtor's operations are managed by Stevan J. Pardo ("Pardo") as Manager. Pardo and his wife, Adrienne Pardo, own 46.65% of the Membership Interests in the Debtor TBE. The remainder of the Membership Interests in the Debtor are owned as follows: 24.85% by Vidaurreta; 8.5% by Engelhard; 2% by Gubnitsky; 5% by Gordon; 5% by the Pardo Family Trust; and 8% by Richardson. Pardo has managed all of the RJD Properties from his office in downtown Miami since inception. Pardo also is a Florida licensed attorney at law.

This Chapter 11 Case was precipitated by several factors which contributed to substantially reduced cash flow, including declining occupancy rates in general, the April 2013 closure of a business which had leased one of the Debtor's commercial offices on the Riverplace Parcel and which the Debtor had managed in return for management fees, and insufficient cash flow due to a substantially undervalued 1980 Chart House Lease. The Debtor asserts that the Chart House Lease is in default and was terminated as a result of tenant's violation of a non-assignability clause in the lease documents. The Debtor's bankruptcy filing did not result from a lack of equity in the RJD Properties. However, as a result of reduced cash flow the Debtor was unable to maintain the Sabadell Mortgage in approximately June 2013, and on February 7, 2014, Sabadell filed a foreclosure action against the Debtor in Duval County, Florida ("Sabadell Litigation").

Because of the economic recession over the last several years which has had a significant impact in Jacksonville, the Debtor had been unable to proceed with anticipated development activity. However, the Debtor had been engaged in discussions pre-petition regarding alternative development projects for the RJD Properties. Nevertheless, on Sabadell's motion in the pending Sabadell Litigation, the Duval County Circuit Court entered an Order directing the Debtor to appear at a hearing on April 29, 2014 to show cause why an immediate Judgment of Foreclosure should not be entered against the Debtor's real and personal property. This case was filed not only to avoid the potential forfeiture of the Riverplace Parcel, but to preserve and protect the substantial equity in the development as a whole.

AARONSON SCHANTZ P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

Some of the RJD Properties are occupied by commercial tenants, including the Chart House Restaurant and the International House of Prayer. This is not a single asset real estate case, nor is it a small business case. Three of the Debtor's four properties are encumbered, and one is unencumbered. In total, the mortgages on the three encumbered properties total approximately $5.1 Million. There is substantial equity in all of the properties.

The Debtor's first parcel, otherwise known as the Riverplace Parcel, is waterfront property on the St. John's River and houses the Chart House Restaurant, six office buildings, and parking areas utilized by Chart House Restaurant, the office buildings and surrounding businesses. The Riverplace Parcel is subject to a First Mortgage in favor of Sabadell. The amount of the mortgage is disputed. The Debtor contests Sabadell's pre-petition acceleration of the loan and imposition of 23.75 % default interest commencing in December 2013. Based on its December 2013 acceleration of the Sabadell Note and the imposition of default interest, Sabadell asserts that the amount of the outstanding debt on the Sabadell Mortgage is approximately $3,877,734.40 including attorney fees, late charges and costs. The Debtor believes that the actual principal and interest owed on the Sabadell Mortgage is approximately $3.6 Million. The Debtor estimates the current fair market value of the Riverplace Parcel to be approximately $4.5 Million.

Pursuant to the Bankruptcy Court's Order Approving Use of Cash Collateral and Approving Adequate Protection Arrangement [ECF 33], as extended by the Court's Second Order Approving Continued Use of Cash Collateral and Approving Adequate Protection Arrangement [ECF 93]. since May 28, 2014, the Debtor has been making monthly payments of $5,000.00 to Sabadell for 2014 real estate taxes on the Riverplace Parcel, and consented to the assignment of the Chart House Restaurant rent of $5,900 per month to be paid directly to Sabadell. Additionally, although Sabadell is oversecured, since August 28, 2014, the Debtor has been making additional monthly payments of $5,000.00 as adequate protection to Sabadell. The Debtor also has maintained the RJD Properties and has maintained all necessary insurance on its properties.

The Debtor's second property, otherwise known as the Prudential Parcel, also is prime waterfront property on the St. John's River and is unencumbered. The Prudential Parcel formerly housed a Crawdaddy's Restaurant, but the restaurant is now closed and that building has been demolished. Presently, this parcel provides parking for the Duval County School Board, the businesses which lease offices from the Debtor on the Riverplace Parcel, and the general public. The Debtor estimates that the fair market value of the Prudential Property is presently approximately $4.0 Million. The Debtor's current negotiations with Alliance for sale of the Sale Parcel includes the Prudential Parcel.

The Debtor's third and fourth properties, otherwise known as the East Parking Lot Parcel and the West Parking Lot Parcel, are located on the southeast and southwest sides of the Wyndham respectively. These parcels are not contiguous but according to the Duval County Property Appraiser's records, they share the same address of 0 Prudential Drive. A portion of the East Parking Lot Parcel has been used at times by the Wyndham for guest parking, and was subject to a parking easement by the Wyndham. In addition, the property has been used to provide parking for surrounding businesses and the general public. The West Parking Lot Parcel is used primarily for public and business parking. Both the East Parking Lot Parcel and West Parking Lot Parcel are subject to a single First Mortgage held by U.S. Century Bank ("U.S.

Century Mortgage") in the amount of about $1.5 Million. The East Parking Lot Parcel is currently valued at approximately $5 Million, and the West Parking Lot Parcel is valued at approximately $1.5 Million. The Debtor's current negotiations with Alliance for sale of the Sale Parcel includes the Eastern portion of the East Parking Lot Parcel. The Debtor's payments to U.S. Century were approximately 30 days past due as of the Petition Date but U.S. Century has not declared a default. The Debtor has not made payments to U.S. Century during the course of this case because U.S. Century is substantially over-secured and has a substantial equity cushion.

As described in detail in the Chart House Litigation, the Debtor asserts that CHLN, Inc., commonly known as Landry's, is a holdover tenant of commercial space known as the Chart House restaurant located on Debtor's Riverplace Parcel. The ground lease dates back to 1981 and its initial term was for 25 years or until December 31, 2006, unless properly extended by the tenant. No proper extension has been made by the tenant.

The ground lease presently provides for a rental rate substantially below market for a downtown Jacksonville waterfront restaurant along the Riverwalk.

The ground lease also contained a prohibition against assignments, and the Debtor had the right in its "sole and absolute discretion" to reject any assignment of the ground lease designed to transfer the ground lease to a third party. There were very specific and limited exceptions to that prohibition, essentially if the original tenant transferred the ground lease to a wholly owned subsidiary or an affiliate as part of a reorganization, but any attempt to transfer the ground lease to a third party was expressly prohibited, regardless of the financial stability of that party. The Debtor asserts that this assignment prohibition, enforceable under Florida law, was breached when Landry's, a public company, attempted to acquire this Chart House restaurant, together with other Chart House restaurants, as part of a publicly disclosed transaction. The Debtor objected to the proposed acquisition from the outset, but the Debtor's repeated written objections, made both before and after the transaction was consummated, were ignored. The Debtor contends that Landry's and the tenant subsequently conspired to circumvent the prohibition against assignment by setting up a nominal subsidiary, and contemporaneously transferring its stock to Landry's. The Debtor believes that the virtual simultaneous creation of a new company and transfer of that company to Landry's was nothing more than an artifice to avoid the nonassignability provisions of the lease. The Debtor believes that the entire transaction was a transparent attempt to proceed with a prohibited transfer of the Debtor's lease interest, and to proceed indirectly with what it was prohibited from doing directly.

After Landry's' transaction closed over Debtor's objection, the Debtor put Landry's on notice that it was occupying Debtor's premises as a month to month tenant. Landry's attempt to extend the ground lease beyond the initial term was rejected in writing. That month to month tenancy continued until December 31, 2006 at which time Debtor reminded Landry's that the ground lease had already terminated when it was unlawfully assigned to Landry's and, in any event, the ground lease had expired by its terms.

In January 2007, after the ground lease had terminated and/or expired, the Debtor believes that Landry's became a holdover tenant and Debtor filed the Chart House Litigation to establish its rights to evict Landry's and collect holdover rent. Debtor also obtained a court order in 2007 requiring Landry's to pay real estate taxes. The formula used to calculate those taxes was the

20

AARONSON SCHANTZ P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

same formula used since prior to Landry's occupancy of Debtor's property. Each year, the Debtor provided Landry's with a real estate tax statement detailing the mathematical calculations of the amounts owed and providing the backup documentation from the Duval County Tax Assessor. The same formula was used in 2007 when Landry's paid its pro rata share of its real estate taxes by Court order. The same process took place from 2007 through 2012, without objection from Landry's.  Landry's now asserts that the real estate taxes for 2011 and 2012 were not properly calculated or were excessive, and in 2014, after receiving the calculation of its 2013 real estate tax bill, and without consent of the Duval County Circuit Court, Landry's paid only a fraction of it pro rata share of 2013 real estate taxes. As a result of Landry's failure to pay its real estate taxes, the 2013 real estate taxes have not been paid to Duval County and still remain delinquent. Landry's takes the same position with respect the 2014 real estate taxes and paid only a fraction of it pro rata share of 2014 real estate taxes.  As a result, the 2014 real estate taxes have not been paid to Duval County and also are delinquent.

The Debtor contends that Landry's has no legal right to occupy the property as a holdover tenant, but in such capacity and pursuant to Court order, it was obligated to pay its share of real estate taxes during the pendency of the Chart House Litigation. Landry's has no basis to contest those real estate taxes that it voluntarily paid in 2011 and 2012, as it has done in its filed Proof of Claim, and Landry's owes the Debtor the balance of the 2013 and 2014 real estate taxes that it failed to pay and that are still owed to the Duval County Tax Assessor.

The owner of the Wyndam Property located at the center of the RJD Properties (the "doughnut hole") recently published a "Call to Bid" on the purchase of the 322-room Wyndam hotel and Wyndam Property, for September 18, 2014.  The Call to Bid notice also provided that a redevelopment opportunity was available by assembling surrounding parcels (i.e., the RJD Properties) for a mixed use project.  Since that time, the Debtor has been actively engaging in discussions with all of the serious interested parties to the proposed Wyndam transaction, including the actual purchaser.  As of this writing, the Wyndham Property owners and the purchaser are about to close on a contract for sale and purchase of the Wyndham Property. During this time the Debtor also has been actively negotiating with other third parties for the purchase of select parcels of the RJD Properties, and in particular has reached an agreement as to most of the essential terms of a contract to sell the Sale Parcel, comprised of the Prudential Parcel and the Eastern portion of the East Parking Lot Parcel, to Alliance Residential Company ("Alliance") for $6,500,000.00.  Although the Debtor had anticipated that a Private Sale Contract with Alliance would be executed by the filing of this Plan, there are still a few remaining issues being negotiated between the Debtor's Manager, Stevan Pardo, and a principal of Alliance. However, the $6,500,000.00 purchase price has already been agreed upon and is not one of the remaining terms subject to negotiation.  Upon execution of a Private Sale Contract with Alliance, the Debtor will provide the contract to interested Creditors subject to certain confidentiality protections.

The Debtor is not presently under contract with a commercial real estate broker to market the RJD Properties.  However, prior to filing the Chapter 11 Petition, the Debtor had hired Colliers International ("Colliers"), an experienced and reputable commercial real estate broker in Jacksonville, Florida, to list and market the RJD Properties for sale.  Although the pre-petition listing agreement with Colliers expired and was not renewed, Colliers has continued to assist the Debtor in its efforts to obtain a purchaser(s) for all or part of the RJD Properties, and Colliers was

responsible for bringing Alliance to the Debtor as a potential purchaser of the Sale Parcel. In the event that the sale of the Sale Parcel to Alliance is consummated, the Private Sale Contract with Alliance provides that Colliers will be paid a reduced commission negotiated by the Debtor from the proceeds of the sale. Upon the Debtor's execution of a Private Sale Contract with Alliance, or with another qualified purchaser if such purchaser is brought to the Debtor by Colliers, then the Debtor will file an application with the Bankruptcy Court to retain Colliers as its broker pursuant to 11 U.S.C. §§ 327, 328, 330 and 1107(a). The Debtor has proceeded in this fashion because it would prefer not to incur a fee to Colliers if another broker were to procure a purchaser.

The Plan provides for a period of seventy-five (75) days immediately following the Final Confirmation Order for the Debtor to execute a final Private Sale Contract for the Debtor's sale of the Sale Parcel to Alliance, or to another qualified purchaser should the contract with Alliance not be executed, which contract shall contain Reasonable Commercial Terms. If a Private Sale Contract has not been executed by the Debtor and Alliance or another qualified purchaser within 75 days following the entry of the Final Confirmation Order, or if there is a Private Sale Contract wherein the buyer opts out during the due diligence period after the 75 days, or if there is a Private Sale Contract wherein the buyer fails to close within the 75 day period for closing pursuant to the Reasonable Commercial Terms of the contract, then the Sale Parcel will be publically marketed for 60 days and sold at Auction Sale, with the Debtor's Members to pay the marketing costs incurred for marketing the Sale Parcel in connection with the Auction Sale. This Plan contemplates that the Debtor will satisfy the U.S. Century Mortgage and cure the Sabadell Mortgage on the Effective Date. Funding will be derived from the Sale Proceeds of the Transaction. The Plan also provides for payment of all Administrative Expense Claims, all Allowed Taxes, Allowed Priority Claims and Allowed Unsecured debt in full. Because no creditors in the Plan are impaired, the Plan does not affect Equity. Pending Plan consummation, Sabadell will continue to be adequately protected under the same terms and conditions that have already been approved by the Court.

There is a dispute between the Debtor and Sabadell regarding the adequacy and propriety of Sabadell's notice of default and acceleration to the Debtor, which is presently unresolved. In the event that the Debtor and Sabadell cannot resolve this dispute, the Debtor will seek the Bankruptcy Court's determination as to the adequacy and propriety of Sabadell's notice of default and acceleration to the Debtor. If the Bankruptcy Court determines that Sabadell's notice to the Debtor was inadequate or improper, then the Debtor will cure the Sabadell Mortgage at the contract rate of interest provided in the Sabadell Note. If the Bankruptcy Court determines that Sabadell's notice to the Debtor was adequate and proper, then the Debtor will cure the Sabadell Mortgage at the default rate of interest provided in the Sabadell Note.

In addition, this Plan provides for the rejection of the Chart House Lease under 11 U.S.C. § 365. In addition to rejecting the lease, the Debtor believes it has a claim against CHLN, based upon its failure to pay real estate taxes and its failure to pay market rate rent during its holdover tenancy. There should be no Allowed Claim by CHLN against the Debtor and the Debtor will also be objecting the CHLN Claim for alleged overpayment of real estate taxes.

## ARTICLE V: SUMMARY OF THE PLAN.

### A. **Plan Summary**.

22

AARONSON SCHANTZ P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

To fund the Plan, the Debtor contemplates a Transaction which will generate sufficient funds on the Effective Date, either to pay or cure all Allowed Claims in full on the Effective Date. The Transaction will also generate funds sufficient to satisfy approved administrative expenses on the Effective Date.

**B.  Administrative Claims and Operating Expenses**.

As provided in Section 1123(a)(1) of the Bankruptcy Code, the Debtor's operating expenses and Administrative Claims against the Debtor will not be classified for purposes of voting or receiving Distributions under the Plan. All such Claims will be treated separately as unclassified Claims and obligations on the terms set forth in Article VI of the Plan.

**C.    Administrative Claimants.**

1.    *Ongoing Operating Costs of Business*.

All ordinary course operating costs and expenses of the Debtor which are outstanding on the Effective Date, including any actual and necessary costs and expenses of operating the Debtor's business, any business-related indebtedness or obligation incurred or assumed by the Debtor during these Chapter 11 Cases, and all post-petition taxes, shall be paid in the ordinary course by the Debtor. No ordinary course business obligations will be paid from Distributions.

2.    *Professional Fees – ASPA*.

The Debtor's legal counsel, Aaronson Schantz Beiley, P.A. ("ASPA"), was retained and approved by the Court *nunc pro tunc* as of the Petition Date. At this time, the Debtor does not know the amount of attorneys' fees and costs that ultimately will be sought by ASPA. Total fees and costs for this case will be approximately $175,000.00 although this is purely an estimate. The total fee in this case may vary depending upon the issues that may be presented and the legal work involved in resolving these issues. The Debtor already has paid ASPA an initial retainer of $25,000.00 for this Chapter 11 Case. Prior to the Confirmation Hearing, ASPA will file an Application for Fees and Reimbursement of Expenses for the Debtor's Chapter 11 Case which will detail the professional services rendered and costs incurred, for review by the Court at Confirmation Hearing. The Court will rule upon the Fee Application based upon the reasonableness of the Application and prevailing case law. Except to the extent that the Holder of Claims for Professional Fees agrees to a different treatment, any Claims for Professional Fees are entitled to be paid on the Effective Date of the Plan, cash equal to the approved amount of such claims.

3.    *United States Trustee*.

The Debtor may owe fees to the Office of the United States Trustee. Fees owed to the Office of the United States Trustee are determined by statute (28 U.S.C. § 1930) and are based upon disbursements made by the Debtor. The Debtor shall pay the U.S. Trustee in full on the Effective Date all sums required pursuant to 28 U.S.C.  § 1930(a)(6). The Debtor will be

AARONSON SCHANTZ P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

requesting that the Court close this case immediately after the Effective Date, which will curtail further U.S. Trustee fees.

        **D.**      **Classification and Treatment of Claims and Interests**.

But for operating expenses and Administrative Claims against the Debtor, the categories of Claims and Interests set forth below classify all Claims against and Interests in the Debtor for all purposes of the Plan, and indicate whether such claims are impaired under the Plan. A Claim or Interest is classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and will be classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. Claims and Interests are divided into the following classes:

| Classification | | Impaired |
|---|---|---|
| Class 1 | Allowed Secured Claims of Duval County Tax Collector | No |
| Class 2 | Allowed Secured Claim of JEA | No |
| Class 3 | Allowed Secured Claim of Sabadell | No |
| Class 4 | Allowed Secured Claim of U.S. Century | No |
| Class 5 | Allowed Priority Claims of the Florida Department of Revenue | No |
| Class 6 | Allowed Priority Claim of Internal Revenue Service | No |
| Class 7 | Allowed Unsecured Claim of CHLN, Inc. (Charthouse) | No |
| Class 8 | Allowed General Unsecured Claims | No |
| Class 9 | Allowed General Unsecured Claims of RJD Members | No |
| Class 10 | Equity Holders | No |

The treatment with respect to each Class of Claims and Interests shall be in full and complete satisfaction, release and discharge of such Claims and Interests, except as otherwise provided in the Plan or the Confirmation Order. The treatment of, and consideration to be received by, Holders of Allowed Claims or Allowed Interests pursuant to the Plan are summarized as follows:

Aaronson Schantz P.A. | Miami Tower | 100 SE 2ND Street, 27TH Floor | Miami, Florida 33131 | Tel 786.594.3000 | Fax 305.424.9336

| Classification | | Claim | Treatment |
|---|---|---|---|
| Class 1 | Allowed Secured Claim of Duval County Tax Collector | $211,125.62 | Class 1, the Duval County Tax Collector, has an Allowed Secured Claim against the Debtor totaling $211,125.62 for: (1) unpaid 2012 and 2013 real estate taxes on the East Parking Lot Parcel (68,743.77); (2) unpaid 2012 and 2013 real estate taxes on the West Parking Lot Parcel (34,240.49); and (3) unpaid 2013 real estate taxes on the Prudential Parcel and the Riverplace Parcel ($108,141.36).<br><br>The Debtor does not contest the validity or extent of Class 1's claim, but believes that CHLN, Inc. is liable for a portion of the unpaid 2013 real estate taxes on the Riverplace Parcel pursuant to the terms of the Chart House Lease. Notwithstanding, the Debtor shall pay the Allowed Claim of Class 1 in full on the Effective Date, and reserves the right to seek reimbursement of all or a portion of the payment from CHLN, Inc.  If the Debtor and CHLN are unable to resolve their differences with respect to CHLN's obligations concerning the Riverplace Parcel, the Debtor shall seek to establish same in the Court. |
| Class 2 | Allowed Secured Claim of JEA | $4,486.38 | Class 2, JEA, has a Secured Claim of $4,486.38, which is secured by a $10,000.00 utilities deposit. JEA has set off this claim against the deposit, and therefore this claim already has been satisfied in full. Class 2 will receive nothing under the Plan. |

Aaronson Schantz P.A. | Miami Tower | 100 SE 2ND Street, 27TH Floor | Miami, Florida 33131 | Tel 786.594.3000 | Fax 305.424.9336

| Classification | | Claim | Treatment |
|---|---|---|---|
| Class 3 | Allowed Secured Claim of Sabadell | $3,877,734.40 | Class 3, Sabadell, filed a Proof of Claim for $3,877,734.40. The Debtor disputes the amount of the Claim, but the Allowed Secured Claim will be satisfied as follows: On the Effective Date, the Debtor will cure the default on the Sabadell Mortgage by: (a) paying all monthly payments to date with appropriate interest, less all adequate protection and other payments made post default; (b) reinstating the loan's maturity date: (c) compensating Sabadell for its reasonable attorney fees incurred in connection with the Sabadell Note.<br><br>There is a dispute between the Debtor and Sabadell regarding the adequacy and propriety of Sabadell's notice of default and acceleration to the Debtor, which is presently unresolved. If the Debtor and Sabadell cannot resolve this dispute, the Debtor will seek the Bankruptcy Court's determination as to the adequacy and propriety of Sabadell's notice of default and acceleration to the Debtor. If the Court determines that Sabadell's notice to the Debtor was inadequate or improper, then the Debtor will cure the Sabadell Mortgage at the contract rate of interest provided in the Sabadell Note. If the Court determines that Sabadell's notice to the Debtor was adequate and proper, then the Debtor will cure the Sabadell Mortgage at the default rate of interest provided in the Sabadell Note.<br><br>Until the Effective Date, the Debtor will continue to adequately protect Sabadell on the same terms and conditions as previously approved by the Court. |

Aaronson Schantz P.A. | Miami Tower | 100 SE 2ᴺᴰ Street, 27ᵀᴴ Floor | Miami, Florida 33131 | Tel 786.594.3000 | Fax 305.424.9336

| Classification | | Claim | Treatment |
|---|---|---|---|
| Class 4 | Allowed Secured Claim of U.S. Century | $1,560,517.36 | Class 4, U.S. Century, filed a Proof of Claim in the amount of $1,560,517.36, which claim is secured by the East Parking Lot Parcel and West Parking Lot Parcel. The Debtor disputes the amount of the Claim based purely upon  the application of the payments to the debt.  In any event, the Allowed Claim will be satisfied as follows: On the Effective Date, in return for a Satisfaction of Mortgage and Cancellation of the Promissory Note, the Debtor will pay Class 4 in full. |
| Class 5 | Allowed Priority Claim of the Florida Department of Revenue | $850.00 | Class 5, the Allowed Priority Claim of the Florida Department of Revenue will be paid in full on the Effective Date. |
| Class 6 | Allowed Priority Claim of Internal Revenue Service | $100.00 | Class 6, the Allowed Priority Claim of the Internal Revenue Service will be paid in full on the Effective Date. |
| Class 7 | Allowed Unsecured Claim of CHLN, Inc. (Chart House) | $101,947.00 | Class 7, the Unsecured Claim of CHLN, Inc. for alleged overpayment of real estate taxes for 2011 and 2012, is disputed. The Debtor is rejecting the CHLN, Inc. purported lease under this Plan, because (a) the Debtor believes that the lease was in default in June, 2003, as a result of the unapproved transfer of the lease from then lessee CHE, Inc. to CHLN and the contemporaneous transfer of CHLN stock to LCH Acquisition, Inc. ("LCH") Acquisition, Inc. ("LCH"), a wholly owned subsidiary of Landry's; and (b) CHLN's January, 2006, wrongful attempt to extend the defaulted, month to month CHE lease. <br><br> To the extent that the Court determines that CHLN has an Allowed Claim, such Allowed Claim will be paid in full on the Effective Date. |

AARONSON SCHANTZ P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

| Classification | | Claim | Treatment |
|---|---|---|---|
| Class 8 | Allowed General Unsecured Claims | $9,561.44 | Allowed Class 8 Claims will be paid in full on the Effective Date. |
| Class 9 | Allowed Unsecured Claims of RJD Members | $334,395.82 | Class 9, the Allowed Unsecured Claims of RJD Members, will be waived under the Plan. |
| Class 10 | Equity Holders | Equity | Because the Plan provides for the cure and/or full payment of all Allowed Claims on the Effective Date, no Creditors are impaired by this Plan. Accordingly, the absolute priority rule set forth in 11 U.S.C § 1129(b)(2)(C)(ii) does not apply to this case, and Equity remains unaffected by this Plan. |

### E.      Voting for the Plan

As discussed previously, the Plan contemplates either the cure or payment in full of all Allowed Secured and Unsecured Claims on the Effective Date. Thus, all Classes of Claims are unimpaired and deemed to have accepted the Plan as a matter of law.

### F.      Means for Implementing Plan.

The Distributions under the Plan will be funded by the Sale Proceeds resulting from the Transaction described in the Plan.

### G.      U.S. Trustee Fees.

The Debtor shall pay the United Stated Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) within ten days of the Effective Date for pre-confirmation periods and simultaneously provide to the United States Trustee the monthly operating reports for each pre-confirmation period; and the reorganized Debtor shall further file monthly operating reports for each post-confirmation period and pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C § 1930(a)(6), until the earlier of the closing of this case by the issuance of Final Decree by the Court, or upon the entry of an Order by this Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code.

### H.      Executory Contracts and Unexpired Leases.

The Bankruptcy Code gives the Debtor the power, subject to the approval of the Bankruptcy Court, to assume, reject, or assume and assign executory contracts and unexpired

leases. Rejection, assumption, and assignment may be effected pursuant to a plan of reorganization.

On the Effective Date, except for the Chart House Lease, all executory contracts and leases with the Debtor will be deemed assumed, unless specifically rejected by separate motion filed prior to the Confirmation Hearing.

The Debtor's Chart House Lease with CHLN is rejected by the Plan. This rejection is based upon § 365 and § 1123(b)(2) of the Code. The Debtor's incentive to reject this lease is based upon the following: (a) the lease is substantially below market rate; (b) the Pre-Petition default by Che, Inc. in failing to obtain the required consent of the Debtor to its assignment of the lease to CHLN; (c) the failure of the tenant under the Lease to properly and timely exercise the option to extend the lease in accordance with the terms of the lease; and (d) CNLN's recent arbitrary and unilateral determination not to pay adequate taxes associated with the present lease.

Under § 365(h) of the Code, if the Court were to determine that CHLN may remain at the premises, notwithstanding, the Reorganized Debtor will no longer be obligated to perform under the terms of the Lease. Accordingly, on or after the Effective Date, CHLN, its staff, customers, and purveyors, will no longer have the right of ingress and egress to the Chart House Restaurant property by way of, on, or through, the Reorganized Debtor's property.

If the Bankruptcy Court has not previously entered an order approving assumption, rejection, and/or assignment of such leases and/or executory contracts, then the Confirmation Order shall constitute an order of the Bankruptcy Court approving all such assumptions and rejections of such executory contracts and unexpired leases, as the case may be, as of the Effective Date. Any monetary amounts by which the contracts and lease to be assumed under the Plan are in default shall be satisfied and agreed by the parties failing which, shall be determined by the Court.

## I.    Legal Proceedings.

1.    Potential Bankruptcy Causes of Action. The Debtor has no bankruptcy avoidance claims in this case.

2.    Other Causes of Action. But for the claims of Sabadell and Chart House as set forth in the Plan and Disclosure Statement, the Debtor has no other non-bankruptcy litigation matters pending.

## J.    Debtor's Post-Confirmation Structure.

1.    Equity Structure. Any change to the Debtor's equity structure occasioned by the Transaction, if any, shall be outside of the Plan and not governed by the Plan.

2.    Management. After confirmation of the Plan, the Debtor shall be managed by its Members, with Mr. Stevan Pardo remaining primarily responsible for the management of the Debtor from his offices at 200 S.E. 1st Street, Miami, Florida 33131.

AARONSON SCHANTZ P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

3.     Compensation.   Currently, the Debtor's Members receive no compensation for their services and the Debtor has no intention of paying its Members in the foreseeable future.

## ARTICLE VI: ALTERNATIVES TO PLAN AND LIQUIDATION ANALYSIS

All payments by the Reorganized Debtor, as provided for in the Plan, shall be financed by the Transaction.

There are three possible consequences if the Plan is rejected or if the Bankruptcy Court refuses to confirm the Plan: (a) the Bankruptcy Court could dismiss the Debtor's Chapter 11 Bankruptcy Case, (b) the Debtor's Chapter 11 Bankruptcy Case could be converted to a liquidation case under Chapter 7 of the Bankruptcy Code, or (c) the Bankruptcy Court could consider an alternative plan of reorganization proposed by the Debtor or by some other party.

A.     **Dismissal.**

If the Debtor's Bankruptcy Case was to be dismissed, the Debtor would no longer have the protection of the Bankruptcy Court and the applicable provisions of the Bankruptcy Code. Dismissal would permit Sabadell to proceed with its foreclosure on the Riverwalk Parcel,  and the value of the RJD Properties collectively would be severely diminished. It is possible that Unsecured Claims would not be repaid, and Equity would lose its interests.  There would be continued state court litigation with Chart House.

B.     **Chapter 7 Liquidation.**

Likewise, under Chapter 7 liquidation, Unsecured Creditors and Equity Holders might not receive any distribution or interest should Sabadell obtain stay relief.  In the absence of a competitive market for the RJD Properties, it is unlikely that Unsecured Creditors and Equity Holders will receive much in Chapter 7.  In this scenario, funds available for distribution would be reduced by new Chapter 7 administrative expenses.  Predicated upon the foregoing, it is management's opinion that a distribution made pursuant to a Chapter 7 liquidation would be substantially less than the distribution contemplated under the Plan, and the distributions could take a far longer time than under the existing Transaction.

## ARTICLE VII: FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN.

This Plan calls for full payment of all debt.  Accordingly, there may or may not be income tax consequences depending upon how the Creditor may have handled its claim from a tax perspective. It is suggested that you consult with your accountant in respect to any potential tax consequences that might result from the confirmation of this Plan, and the Distribution.

## ARTICLE VIII: EFFECTIVENESS OF THE PLAN

A.     **Conditions Precedent.** The Plan shall not become effective unless and until the Transaction is consummated.

AARONSON SCHANTZ P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

B.    **Waiver of Deadlines or Other Conditions.** As contemplated by the definition of Confirmation Date and Effective Date herein, the deadline(s) set forth above may be extended as may be necessary to reasonably accommodate the Court's calendar.

C.    **Default Remedies.** If the Debtor is unable to perform the terms and conditions of the Plan, the Debtor shall be in default.  In the event of a default, all Secured Creditors of the Debtor shall be entitled to relief from the discharge injunction provisions of the Plan upon Notice and opportunity to cure.   Additionally, in the event of a default, all Allowed Administrative Creditors, Priority Creditors, and General Unsecured Creditors of the Debtor shall also be granted relief from injunctive provisions of the Plan after Notice and opportunity to cure.

## ARTICLE IX: ACCEPTANCE AND CONFIRMATION OF PLAN.

As a condition of confirmation of the Plan, the Bankruptcy Code requires the Court determine that: (i) the Plan complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and (ii) the Debtor's disclosures concerning the Plan have been adequate and have included information concerning all payments made or promises by the Debtor in connection with the Plan and the Chapter 11 Case.

Section 1129 of the Bankruptcy Code, which sets forth the requirements that must be satisfied in order for the Plan to be confirmed, lists the following requirements for the approval of any plan of reorganization:

A.    A plan must comply with the applicable provisions of the Bankruptcy Code, including, *inter alia*, §1123(a)(4), which provides that a plan must "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."  Such anti-discrimination provision applies to contingent claims (such as guaranty claims) as well as all other claims and interests.

B.    The proponent of a plan must comply with the applicable provisions of the Bankruptcy Code;

C.    A plan must be proposed in good faith and not by any means forbidden by law;

D.    Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under a plan, for services or for costs and expenses in or in connection with the case, or in connection with such plan and incident to the case, must be approved by, or by subject to the approval of, the court as reasonable;

E.    The proponent of a plan must disclose the identity and affiliations of any individual proposed to serve, after confirmation of such plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under such plan, and the appointment to, or continuance in, such officer or individual, must be consistent with the interests of creditors and equity security holders and with public policy, and the proponent of a plan must disclose the identity of any insider that will be

31

AARONSON SCHANTZ P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

employed or retained by the reorganized debtor, and the nature of any compensation of each insider;

F.        Any governmental regulatory commission with jurisdiction, after confirmation of a plan, over the rates of the debtor must approve any rate change provided for in such plan, or such rate change is expressly conditioned on such approval. The Plan proposes no such change, nor does the Debtor have rates over which any governmental authority exercises jurisdiction;

G.        Each holder of a claim or interest in an impaired class of claims or interest must have accepted the plan or must receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code on such date; or, if the class is a class of secured claims that elects non-recourse treatment of the claims under 11 U.S.C. § 1111(b), each holder of a claim in such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims;

H.        With respect to each class of claims or interest, such class must accept the plan or not be impaired under the plan (subject to the Cramdown Provision discussed under "Confirmation Without Acceptance By All Impaired Classes");

I.        Except to the extent that the Holder of a particular claim has agreed to a different treatment of such claim, a plan must provide that:

(A)        with respect to an administrative claim and certain claims in an involuntary case, on the effective date of the plan, the Holder of the claim will receive on account of such claim cash equal to the allowed amount of the claim;

(B)        with respect to a class of priority wage, employee benefit, consumer deposit and certain other claims described in 11 U.S.C. § 507(a)(3)-(6), each holder of a claim of such class will receive:

(i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim;

(ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim.

(C)        with respect to a priority tax claim of a kind specified in 11 U.S.C. § 507(a)(8), the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the date of assessment of such claim a value, as of the effective date of the plan equal to the allowed amount of such claim;

32

AARONSON SCHANTZ P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

J.      If a class of claims is impaired under a plan, at least one class of claims that is impaired under such plan must have accepted the plan, determined without including any acceptance of the plan by any insider;

K.      Confirmation of a plan must not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the plan, unless such liquidation or reorganization is proposed in the plan.  This is the so-called "feasibility" requirement;

L.      All fees payable under 28 U.S.C. § 1930, as determined by the Court at the hearing on confirmation of the plan, must have been paid or the plan must provide for the payment of all such fees on the effective date of the plan; and

M.      A plan must provide for the continuation after its effective date of payment of all retiree benefits, as that term is defined in 11 U.S.C. § 1114, at the level established pursuant to 11 U.S.C. § 1114(e)(1)(B) or (g), at any time prior to confirmation of such plan, for the duration of the period the debtor has obligated itself to provide such benefits.  The Debtor has no such benefits.

This Disclosure Statement discusses three of these requirements: (a) the feasibility of the Plan; (b) acceptance by impaired classes; and (c) the minimum value standard.  Further, the required disclosures described in ¶5 above are also contained herein.  The Debtor believes that the Plan meets all the requirements of 11 U.S.C. § 1129(a) and will seek a ruling of the Court to this effect at the hearing on confirmation of the Plan.  You are urged to consult your own counsel to evaluate each and every one of the standards for confirmation of the Plan under the Bankruptcy Code.

## ARTICLE X: MISCELLANEOUS PROVISIONS.

### A.      Injunction.

Except as otherwise expressly provided in the Plan, the Confirmation Order, or a separate Order of the Bankruptcy Court, all entities who have held, hold, or may hold claims against or equity interest in the Debtor and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, are permanently enjoined, on and after the effective date, from: (i) commencing or continuing in any manner, any action, or other proceeding of any kind against the debtor or reorganized debtor with respect to any such claim or equity interest; (ii) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order against the debtor or reorganized debtor on account of any such claim or equity interest; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the debtor or reorganized debtor of any such claim or equity interest; (iv) commencing or continuing in any manner, any action, or other proceeding of any kind with respect to any claims and causes of action which are extinguished or released pursuant to the  plan; and (v) taking any actions to interfere with the implementation or consummation of the  plan.

### B.      Terms of Injunctions or Stays.

Aaronson Schantz P.A. | Miami Tower | 100 SE 2nd Street, 27th Floor | Miami, Florida 33131 | Tel 786.594.3000 | Fax 305.424.9336

Unless otherwise provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 case under 11 U.S.C. §§ 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date or the date indicated in such applicable Order.

Notwithstanding anything to the contrary set forth herein, the foregoing releases and injunctions shall not prohibit or impair the rights of any parties to commence or pursue actions based on fraud or violations of applicable securities law.

### C.    Exculpation.

Under the Plan, except as otherwise specifically provided therein, the Debtor, its officers, directors, members, managers, employees, representatives, attorneys, financial advisors, agents, affiliates, or any of such parties' successors and assigns, shall not have or incur, and are released from, any claim, obligation, cause of action or liability to one another or to any holder of a Claim or an interest, or any other party in interest, or any of their respective officers, directors, employees, representatives, attorneys, financial advisors, partners, members of partners, managers or members of partners, or agents, or affiliates, or any of such parties' successors and assigns, for any act or omission in connection with, relating to, or arising out of the filing of this Chapter 11 Case, the preparation of this Plan, the pursuit of Confirmation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their negligence or professional negligence as the case may be. Any such claim shall be irrevocably barred after one year from the Confirmation Date.

### D.    No Waiver of Causes of Action.

No provision of the Plan shall compromise, settle or release any claims or causes of action belonging to the Debtor.  On the Effective Date, the Reorganized Debtor will be authorized to commence and prosecute any and all claims that arose before, on or after the Petition Date.

### E.    Allowance of Claims

Unless the Plan states otherwise, the Debtor has no intent to dispute any filed or Scheduled Claims in this case.

### F.    Modification of Plan

At any time before the Confirmation Date, the Debtor may modify the Plan, but the Debtor may not modify the Plan so that the Plan, as modified, fails to meet the requirements of 11 U.S.C. §§ 1122 and 1123.  The Debtor has no intent to pay or cure creditors at less than 100% of their Allowed Claims on the Effective Date.  To the extent that there may be any proposed modification of the Plan, all Creditors and interested parties will receive notice and have an opportunity to object.

### G.    Solicitation

AARONSON SCHANTZ P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

Pursuant to 11 U.S.C. § 1125(e), the transmittal of the Plan solicitation package (including Disclosure Statement and the Plan) and the Reorganized Debtor's (or any other person's) participation in such activities are not and will not be governed by or subject to any otherwise applicable law, rule or regulation.

## ARTICLE XI: EFFECT OF CONFIRMATION OF PLAN

### A.      Discharge.

This Plan provides that upon the Effective Date, the Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. § 1141.  However, any liability imposed by the Plan will not be discharged.

### B.      Re-vesting of Property in the Debtor.

On the Effective Date, except as otherwise may be provided in the Confirmation Order, title to all of the Debtor's assets including any and all causes of action which may have existed against third parties will re-vest in the Reorganized Debtor, free and clear of all claims and interests, except as otherwise expressly stated in the Plan. After the Effective Date the Reorganized Debtor may use, acquire and dispose of any property free and clear of all claims and interests except as otherwise provided in the Plan or the Confirmation Order.

### C.      Final Decree.

Upon Substantial Consummation, the Debtor will seek to have the case Administratively Closed with the Bankruptcy Court retaining jurisdiction over the proceedings to the extent necessary to reopen the case to deal with any issues or changes in distributions arising from the implementation of the Plan.

## ARTICLE XII: CONCLUSION

The Debtor believes that Confirmation of the Plan is desirable and in the best interests of creditors and interest holders.  The Plan provides for equitable distributions to all Classes of the Debtor's Creditors and provides for either the curing or payment in full of all Classes of Creditors. Any alternative to confirmation of the Plan, such as dismissal or liquidation under Chapter 7 of the Bankruptcy Code would result in far less recovery.

Dated: March 13, 2015.

**Aaronson Schantz Beiley P.A.**
*Counsel to Debtor*
Miami Tower, 27th Floor
100 S.E. 2nd Street
Miami, Florida 33131
Phone: 786.594.3000
Fax:    305.424.9336
Email: gaaronson@aspalaw.com
          tmckeown@aspalaw.com

By: /s/  Geoffrey S. Aaronson
   Geoffrey S. Aaronson, Esq.
   Fla. Bar No.: 349623
   Tamara D. McKeown, Esq.
   Florida Bar No.: 773247

**RIVERWALK    JACKSONVILLE
DEVELOPMENT, LLC**

By: s/  Steven J. Pardo
   Steven J. Pardo, Esq., Manager

Aaronson Schantz P.A. | Miami Tower | 100 SE 2ND Street, 27TH Floor | Miami, Florida 33131 | Tel 786.594.3000 | Fax 305.424.9336

SALE PARCEL

EXHIBIT "A"

| Property 1 | Property 2 |
|---|---|
| Riverfront | Riverfront |
| 1501 Riverplace Boulevard | 1643 Prudential Drive |
| Folio 1122677.0000 | Folio 1122677.0000 |
| Chart House, Offices, Church & Parking | Parking (Old Crawdaddy's Site) |
| Sabadell Mortgage $3.8 M | Unencumbered |
| FMV $4.6 M | FMV $4.0 M |

RE Taxes $108,141

| Property 3 | Property 4 |
|---|---|
| Prudential Drive | Prudential Drive |
| 0 Prudential Drive | 0 Prudential Drive |
| Folio 1122678.0000 | Folio 1122668.0000 |
| West Parking | East Parking & Hotel Easement |
| RE Taxes $16,669 | RE Taxes $33,688 |
| FMV $1.5 M | FMV $5.0 M |

U.S. Century Mortgage $1.6 M

EXHIBIT "B"