UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

RIVERWALK JACKSONVILLE    CASE NO.: 14-19672-LMI
DEVELOPMENT, LLC,

                                                                                                Chapter 11

      Debtor,
_____/

**DEBTOR'S MOTION FOR AN ORDER (I) AUTHORIZING SALE
OF PORTION OF DEBTOR'S REAL PROPERTY PURSUANT
TO BANKRUPTCY CODE SECTION 363 (b) AND (f) AND RULES
6004(c) AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE, AND (II) APPROVING CONTRACT FOR SALE**

       Riverwalk Jacksonville Development, LLC, Debtor and Debtor in Possession ("RJD" or "Debtor"), by and through undersigned counsel, files this motion requesting an Order authorizing the sale of a portion of Debtor's real property free and clear of all liens and other interests pursuant to 11 U.S.C. §§ 363(b) and (f) and Rules 6004(c) and 9014 of the Federal Rules of Bankruptcy Procedure, and approving the contract for the sale of that real property, all as more specifically set forth hereunder, and in support thereof, respectfully states as follows:

**CONCISE STATEMENT OF RELIEF REQUESTED**

       1.     By this Motion the Debtor seeks the Court's approval of a Purchase and Sale Agreement (Jacksonville South Bank) ("Contract") for the sale of a portion of the Debtor's real property to Alliance Realty Partners, LLC, and authorization the sale of that property to Alliance free and clear of all liens and other interests pursuant to 11 U.S.C. §§ 363(b) and (f) and Bankruptcy Rules 6004(c) and 9014.  A copy of the Contract with Alliance is attached hereto as Exhibit "A." The material terms of the Contract are as follows:

          a.     The portion of the Debtor's property to be sold is the entirety of the Prudential Parcel, which the Debtor now understands to be encumbered by the

Sabadell mortgage as discussed below, combined with the eastern portion of the Eastern Parking Lot Parcel, which is encumbered by the U.S. Century Mortgage. The property proposed to be sold was defined in the Debtor's Plan as the "Sale Parcel." A plat map of the Sale Parcel is attached hereto as Exhibit "B."

b.  The purchaser of the Sale Parcel is Alliance Realty Partners, LLC ("Alliance" or "Buyer"). Alliance is an unrelated third party, and is not an insider of the Debtor.

c.  The Buyer will be purchasing the Sale Parcel "as is – where is" without warranties or representations, except that it will be purchasing the Sale Parcel free and clear of all liens, claims and encumbrances, with all liens, claims and encumbrances to attach to proceeds of sale pursuant to order of this Court under 11 U.S.C. §§ 363(b) and (f) and Bankruptcy Rules 6004(c) and 9014.

d.  The base purchase price of the Sale Parcel is $6,500,000.00, and the sale is contingent upon Buyer's receipt of all Governmental approvals necessary for the development of not less than two hundred fifty-five (255) units on the Sale Parcel, together with associated amenities, parking and other related property features. To the extent that the Governmental approvals obtained by Buyer shall permit the construction and occupancy of more than 255 units on the Sale Parcel, then the base purchase price of $6,500,000.00 will increase by $20,000.00 for each unit above 255 units.

e.  The closing of the proposed sale is to occur fifteen (15) days after the latter of the Inspection Date or the Buyer's receipt of all Government Approvals (as those terms are defined in the Contract). The Contract also provides that if Buyer closes on the Sale Parcel prior to nine (9) months after the Contract Date, the Debtor,

2

**Aaronson Schantz Beiley P.A. | Miami Tower | 100 SE 2nd Street, 27th Floor | Miami, Florida 33131 | 786.594.3000 | Fax 305.424.9336**

as Seller, will give Buyer a per diem credit equal to $1,666.66 for each day that Buyer closes earlier than the 9th month closing date. Conversely, if Buyer exercises its option to defer the closing past the 9th month closing date (which it may do for a maximum of three (3) consecutive 30 day periods), then Buyer will deposit an additional $50,000.00 earnest money for each 30 day extension.

      f.    The lienholders in the Sale Parcel are Sabadell United Bank, N.A. ("Sabadell"), U.S. Century Bank ("U.S. Century"). Sabadell holds a first mortgage on the north portion of the Sale Parcel (the "Prudential Parcel"). U.S. Century holds a mortgage on the south portion of the Sale Parcel (the eastern portion of the Eastern Parking Lot Parcel).

2.    The proposed sale of the Sale Parcel to Alliance forms the foundation of the Debtor's Amended Plan of Reorganization ("Plan"), and although the Debtor seeks to amend its Plan for the reasons set forth below, the proposed sale to Alliance will remain at the core of Debtor's amended Plan and will create the primary source of funds for the proposed treatment of creditors under the amended Plan.

3.    As further set forth below, this Motion seeks only approval of the Contract with Alliance. The Debtor does not seek approval at this time regarding the disposition of any sale proceeds resulting from the proposed sale to Alliance.

## JURISDICTION

4.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 363(b) and (f). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),(B),(K),(M),(N) and (O).

5.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

Aaronson Schantz Beiley P.A. | Miami Tower | 100 SE 2nd Street, 27th Floor | Miami, Florida 33131 | 786.594.3000 | Fax 305.424.9336

6.  Relief is requested herein pursuant to 11 U.S.C. § 363(b) and (f) of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## PROCEDURAL BACKGROUND

7.  Riverwalk Jacksonville Development, LLC, a Florida LLC, Debtor and Debtor in Possession ("Debtor" or "RJD") filed a petition for relief and reorganization under Chapter 11 of the United States Bankruptcy Code ("Code") with this honorable Court on April 28, 2014.

8.  On March 13, 2015, the Debtor filed its Amended Plan of Reorganization and supporting Disclosure Statement (collectively "Plan"). [ECF 97, 98]. The current Plan provides, *inter alia*, for a cure of the Sabadell mortgage default and a pay-off of the U.S. Century Bank mortgage.

9.  On March 19, 2015, the Court, after hearing, entered its Order (I) Approving Disclosure Statement; (II) Setting Hearing on Confirmation of Amended Plan; (III) Setting Hearing on Fee Applications; (IV) Setting Various Deadlines; and (V) Describing Plan Proponent's Obligations ("Disclosure Statement Order"), which set a Confirmation Hearing on Debtor's Plan of Reorganization for May 28, 2015 ("Confirmation Hearing"). [ECF 106].

10. The Disclosure Statement Order provided for various deadlines, including April 18, 2015, as the deadline for Objections to Claims. The Debtor filed two objections to claims, one was the claim of CHLN, Inc. [Claim 4], which was part of Adversary Proceeding 15-01269-LMI filed on April 17, 2015, in the matter of Riverwalk Jacksonville Development, LLC vs. CHLN, Inc. and Landry's, Inc. The other was an objection to an untimely-filed claim by Keandra Williams [Claim 5], which was based on the wrongful death of an individual who, upon information and belief, was trespassing on the Debtor's property at the time of the incident.

11. The Disclosure Statement Order also provided for May 7, 2015, as the deadline for Fee Applications; May 14, 2015, as the Deadline for Objections to Confirmation; May 22, 2015, as

4

the deadline for filing proponent's Report and Confirmation Affidavit; and May 28, 2015 as the date of the Confirmation Hearing.

12. Since the Disclosure Statement hearing and the entry of the Disclosure Statement Order, there have been important developments in this case which lead to the Debtor filing its Emergency Motion for Order Vacating Order Approving Disclosure Statement; Setting New Deadlines; Re-Setting Confirmation Hearing; and Continuing Exclusivity [ECF 145] ("Motion to Vacate"). In short, the Debtor has since learned that the portion of its Jacksonville property which it believed to be unencumbered, and which is part of the larger parcel that the Debtor seeks to sell as the foundation of its Plan, is in fact encumbered by the Debtor's mortgage with Sabadell.

13. In 2011, the Debtor modified and refinanced its mortgage loan with Sabadell. The Debtor believed, at the commencement of and throughout this case, that Sabadell expanded its mortgage on Debtor's property in 2011 to include the parking lot on the westernmost portion of the Debtor's Riverplace Parcel, but not on the Debtor's Prudential Parcel site as well. Throughout this case, the Debtor has referred to the Prudential Parcel -- without correction or objection by Sabadell -- as the "unencumbered" parcel, but has recently learned that the legal description of the property which collateralizes the Sabadell mortgage actually includes the Prudential Parcel as well. The Prudential Parcel is part of the larger parcel which the Debtor proposes to sell to fund its current Plan of Reorganization. As a result, the Debtor must amend its current Plan of Reorganization and accordingly, filed its Motion to Vacate.

14. Notwithstanding this recent development regarding Sabadell's security interest in the Prudential Parcel, the Debtor's is pleased to report that its contract with Alliance Realty Partners, LLC ("Alliance") for the sale of two of the Debtor's eastern parcels (the Prudential Parcel and the eastern portion of the Eastern Parking Lot Parcel), referred to in the Debtor's Plan as the "Sale Parcel," now has been executed (the "Contract"), and by this Motion, the Debtor seeks the Court's approval of the Contract, and of Debtor's sale of the Sale Parcel free and clear of all liens and other

5

interests pursuant to 11 U.S.C. §§ 363(b) and (f) and Rules 6004(c) and 9014 of the Federal Rules of Bankruptcy Procedure, with all liens, claims and encumbrances to attach to the proceeds of sale.

15. This Court ultimately will determine the use of the sale proceeds, whether pursuant to an amended Plan of Reorganization or otherwise, and the Debtor does not seek a determination by this Motion regarding the disposition of any proceeds of the sale to Alliance. However, it is important that the Court grant the Debtor the authority to proceed with the sale now pending the Court's future consideration of the Debtor's amended Plan, and in the event that the sale to Alliance closes prior to confirmation of a Plan, the Debtor will place all sale proceeds in escrow, subject to all liens, claims and encumbrances.

## FACTUAL BACKGROUND

16. RJD owns and operates four different real properties that generally surround the Wyndham Hotel in the "Jacksonville Riverwalk" area of downtown Jacksonville, along the south side of the St. John's River. Two of the properties front the St. John's River and the other two properties front Prudential Drive on the south side of the properties. Their common addresses are 1501 Riverplace Boulevard (the "Riverplace Parcel"), 1643 Prudential Drive (the "Prudential Parcel"), and 0 Prudential Drive (the "Parking Lot Parcels"), Jacksonville Florida 32207. The properties consist of approximately 10.4 acres, and constitute prime commercial space. Presently occupying the properties are a Charthouse restaurant, various office buildings and various parking lots which are used by the restaurant, the office buildings, and surrounding businesses. One of the office buildings also accommodates a church. This is not a single asset real estate case and it is not a small business case.

17. All of the properties have been managed by Stevan J. Pardo from inception. Pardo, along with his wife, own 46.65% of the membership interests as tenants by the entirety. Pardo has managed these properties from his office in downtown Miami since inception. Pardo is also a Florida licensed attorney at law.

6

**Aaronson Schantz Beiley P.A. | Miami Tower | 100 SE 2nd Street, 27th Floor | Miami, Florida 33131 | 786.594.3000 | Fax 305.424.9336**

18.     Until recently, the Debtor believed that two of the four properties (the Parking Lot Parcels) were encumbered by a mortgage with U.S. Century Bank ("U.S. Century") to collateralize a loan of approximately $1.5 million, one property (the Riverplace Parcel) was encumbered by a mortgage with Sabadell United Bank, N.A. ("Sabadell") to collateralize a loan of approximately $3.45 million, and one property (the Prudential Parcel) was unencumbered.  However, as discussed below and in the Debtor's Motion to Vacate, the Debtor recently has become aware that as a result of an error in the legal description of the property which was to be encumbered by the Sabadell mortgage, not only is the Riverplace Parcel (the sole parcel intended by the Debtor to be used as collateral) encumbered by the Sabadell mortgage, but the Prudential Parcel is encumbered by the Sabadell mortgage as well because the legal description of the two adjacent parcels combined was erroneously provided to Sabadell in connection with the mortgage.

19.     Thus there are two mortgages on the Debtor's properties presently totaling approximately $5.1 to $5.3 million and there is still substantial equity in all of these properties. As reflected below, of the two properties encumbered by the Sabadell mortgage, Property 1 (the Riverplace Parcel) houses the Chart House restaurant, four office buildings and parking used by the restaurant, the office buildings, and surrounding businesses. Property 2 (the Prudential Parcel) presently provides parking for the Duval County School Board and the public.

20.     Properties 3 and 4 (the Parking Lot Parcels) are both encumbered by a mortgage of approximately $1.5 Million held by U.S. Century Bank.  Property 3 is on the west side of the Wyndham Hotel fronting on Prudential Drive, and is used primarily for public and business parking (the "Western Parking Lot Parcel").  Property 4 is not contiguous with Property 3 and is located on the east side of the Wyndham Hotel (the "Eastern Parking Lot Parcel").  The western portion of Property 4 is subject to a non-exclusive parking easement in favor of the hotel.  The remainder of Property 4, the eastern portion, also provides parking for surrounding businesses and the public.

21. The locations, addresses, folio numbers, occupants, taxes and estimated fair market values for each of the Debtor's properties as of the petition date are set forth below:

| Property 1 | Property 2 |
|---|---|
| Riverfront | Riverfront |
| 1501 Riverplace Boulevard | 1643 Prudential Drive |
| Folio 1122677.0000 | Folio 1122677.0000 |
| Chart House Restaurant, 6 Office Buildings including Church & Parking | Parking (Old Crawdaddy's Site) |
| FMV $4.6 M | FMV $4.0 M |
| Combined RE Taxes $108,141 ||
| Sabadell Mortgage – Approx. $3.6 - $3.8 M ||

| Property 3 | Property 4 |
|---|---|
| Prudential Drive | Prudential Drive |
| 0 Prudential Drive | 0 Prudential Drive |
| Folio 1122678.0000 | Folio 1122668.0000 |
| West Parking | East Parking & Hotel Easement |
| RE Taxes $16,669 | RE Taxes $33,688 |
| FMV $1.5 M | FMV $5.0 M |
| U.S. Century Mortgage – Approx. $1.5 M ||

22. According to a combined appraisal of the Riverplace and Prudential Parcels recently performed at the request of Sabadell, which was obtained from Sabadell by the Debtor pursuant to a Rule 2004 request, those two parcels together comprise approximately 6.5 acres and have a combined estimated value of $5,575,000.00. The Prudential Parcel, which Debtor proposes to sell to Alliance as part of the Sale Parcel, comprises only approximately 1.5 acres of the 6.5 acre total, and thus based on Sabadell's appraisal, the Prudential Parcel alone is valued at approximately $1.3 million. And while the Debtor does not have a current appraisal of the Eastern Parking Lot Parcel, the proposed Sale Parcel includes only the eastern portion of the Eastern Parking Lot Parcel, and the U.S. Century lien of $1.5 million, which is secured by both the Eastern and Western Parking Lot

8

Parcels, is still amply secured by the remaining property.[1]  Based on the Debtor's prior estimated value of that parcel as a whole, the proposed sale price clearly exceeds the estimated value of those parcels.

23.     Debtor's proposed sale of the Sale Parcel to Alliance for $6,500,000.00 would result in a sale of approximately one-third of the Debtor's total real property, but would result in sufficient sale proceeds to allow the Debtor to fund an amended Plan of Reorganization, adequately protect its secured lenders, and still retain the Riverplace Parcel, the Western Parking Lot Parcel, and the western portion of the Eastern Parking Lot Parcel.

## RELIEF REQUESTED

24.     By this Motion, the Debtor requests entry of an Order, pursuant to Section 363(b) and (f) of the Bankruptcy Code and Bankruptcy Rules 6004 and 9019, approving the Contract between the Debtor and Alliance, and authorizing the sale of the Sale Parcel property free and clear of liens, claims and encumbrances, with liens, claims and encumbrances to attach to proceeds of sale.

## MEMORANDUM OF LAW

**A.     11 U.S.C. § 363(b)(1)**

25.     Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  The use, sale, or lease of property of the estate, other than in the ordinary course of business, is authorized when there is a sound business justification for the action.  *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1069 (2d Cir. 1983)   The rule adopted by the *Lionel* court requires that a

---

[1] Even if the eastern portion of the Eastern Parking Lot Parcel which Debtor proposes to sell comprised a full half of the property securing the debt to U.S. Century, half of the U.S. Century debt is only $750,000.

9

judge determining a § 363(b) application expressly find from the evidence presented before him/her at the hearing a good business reason to grant such an application.[2] *Id.* at 1071.

26. Moreover, the record should reflect satisfaction of the elements necessary for approval of a §363 sale in a Chapter 11 case, which are that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith. <u>Matter of Phoenix Steel Corp.</u>, 82 B.R. 334, 335-336 (Bankr. D. Del. 1987). In addition to these factors, some courts will look as well at whether the proposed transaction is an "arms-length" transaction, and whether it has been given adequate marketing. <u>In re Wilde Horse Enterprises. Inc.</u>, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991)

27. As the <u>Lionel</u> court recognized, many courts have approved out of the ordinary course sales prior to plan approval under the Bankruptcy Code where the court made findings of fact indicating why the sale was in the best interest of the estate. *See e.g.,* <u>In re Burke Mountain Recreation, Inc.</u>, 56 B.R. 72 (Bankr. D. Vt. 1985) (approving sale of parcel of real property which comprised only portion of debtor's estate, where case pending for seven months, disclosure statement and development plan had been filed, and sale proceeds would provide working capital for debtor to open for winter ski season); <u>Matter of Phoenix Steel Corp.</u>, 82 B.R. 334, 336 (Bankr. D. Del. 1987) (approving "arms-length" sale of equipment for "fair and equitable" price after extensive advertising of sale of plant resulted in only two offers received, one in which financing contingency failed); <u>In re New Era Resorts, LLC</u>, 238 B.R. 381, 387 (Bankr. E.D. Tenn. 1999) ("sound business purpose" dictated approval of sale where purchaser's offer for debtor's real property was best possible price for asset and sale would benefit creditors).

---

[2] The Lionel court offered a non-exclusive list of relevant factors that a bankruptcy court might consider in ruling on a § 363 sale motion, including: the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing of the bankruptcy case, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on the debtor's future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions, and whether the asset is increasing or decreasing in value. <u>In re Lionel Corp.</u>, 722 F.2d 1063, 1071.

28. The present availability of a good business opportunity may also be in the best interests of the Chapter 11 estate:

> [T]he real justification for authorizing the sale was the belief that the property's value depended on whether a hotel could be built in time for the World's Fair and that an advantageous sale after the opening of the World's Fair seemed unlikely. Thus, the reason was not solely that a steel skeleton was deteriorating, but *rather that a good business opportunity was presently available, so long as the parties could act quickly. In such cases therefore the bankruptcy machinery should not straightjacket the bankruptcy judge so as to prevent him from doing what is best for the estate.*

<u>Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)</u>, 722 F.2d 1063, 1069 (2d Cir. 1983) *quoting* <u>In re Sire Plan, Inc.</u>, 332 F.2d 497 (2d Cir.1964) (emphasis added).

29. In the instant case, the Debtor has an arms-length contract with an unrelated third party purchaser which wants to acquire a portion of the Debtor's property for $6.5 million to develop a multi-unit residential project on the site. The development of such a project would increase the value of the Debtor's remaining property and enhance other development opportunities on the remaining parcels. The proposed Sale Parcel comprises only about one-third of the Debtor's total real property, and the proposed sale price is fair and equitable. Moreover, all of the Debtor's parcels have been marketed for sale for more than a year by Colliers International, the largest commercial real estate brokerage firm in Jacksonville, and while other parties had discussed making offers for certain of the Debtor's parcels, none of those discussions had come to fruition prior to the Alliance Contract. The Debtor's proposed sale of the Sale Parcel to Alliance would be free and clear of all liens and other interests pursuant to 11 U.S.C. §§ 363(b) and (f) and Bankruptcy Rules 6004(c) and 9014, with all liens, claims and encumbrances to attach to the proceeds of sale, and in the event that the sale to Alliance closes prior to confirmation of a Plan, the Debtor will place all sale proceeds in escrow, subject to all liens, claims and encumbrances.

B.  **11 U.S.C. § 363(f)**

30. Under 11 U.S.C. § 363(f), the Debtor may sell property free and clear of all liens, claims and encumbrances only if:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C.A. § 363(f)

31. Under the circumstances of this case, it is clear that this sale may proceed with Alliance purchasing the Sale Parcel free and clear of liens, claims and encumbrances under subparts (1), (3) and (5). Nonbankruptcy law would permit the sale of Debtor's property free and clear of liens subject to the extinguishment of those liens from the proceeds of sale, and Sabadell and U.S. Century could be compelled to accept a money satisfaction of their interests in the Sale Parcel. See *In re The Drexel Burnham Lambert Group Inc.*, 120 B.R. 724, 736 (Bankr.S.D.N.Y. 1991) (under section 363(f), sales of estate property free and clear of interests are permitted, *inter alia,* to the extent applicable nonbankruptcy law so permits). Moreover, the price of the proposed sale to Alliance is far greater than the aggregate value of the liens on the Sale Parcel. *See, e.g., In re 18th Ave. Development Corp.*, 14 B.R. 862 (Bankr. S.D. Fla. 1981) (Trustee for real estate developer met requirement for selling debtor's property free of all liens and could sell lots in subdivision singly where method of sale would result in higher sales price per lot than if sold in bulk or at foreclosure; interests of all lienors, claimants and parties in interest would be protected by transferring all liens, claims and interest to proceeds of sales). See also *In re Matter of Rouse,* 53 B.R. 156 (Bankr. W.D. Mo.1985) (In order for a sale free and clear of liens to be authorized, it must be demonstrated that

12

such a sale has a reasonable promise of realizing excess value over the balances due on the existing liens).

32. The Debtor believes that the proposed sale to Alliance is fair, reasonable, equitable and in the best interests of the Estate for the reasons set forth herein. Accordingly, the Debtor respectfully requests that the Court approve (1) the Debtor's Contract with Alliance; and (2) the sale of the Sale Parcel free and clear of all liens, claims and encumbrances, with all liens, claims and encumbrances to attach to proceeds of sale. In the event that the sale to Alliance closes prior to confirmation of a Plan, the Debtor will place all sale proceeds in escrow, subject to all liens, claims and encumbrances, until a determination is made by the Court regarding the disposition of those proceeds, pursuant to an amended Plan of reorganization or otherwise.

WHEREFORE Riverwalk Jacksonville Development, LLC respectfully requests that the Court approve (1) the Debtor's Contract with Alliance; and (2) the sale of the Sale Parcel free and clear of all liens, claims and encumbrances, with all liens, claims and encumbrances to attach to proceeds of sale as set forth herein, and any other and further relief as may be appropriate.

Respectfully submitted,
Aaronson Schantz Beiley P.A.

s/ Tamara D. McKeown
Geoffrey S Aaronson, Esq.
Florida Bar No. 349623
Tamara D. McKeown, Esq.
Florida Bar No. 773247
Miami Tower, 27th Floor
Miami, Florida 33131
Tel. 786.594.3000
Fax 305.424.9336
gaaronson@aspalaw.com
tmckeown@aspalaw.com
*Attorneys for Debtor*

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on May 19, 2015 on all CM/ECF electronic notice parties as set forth below, and on May 20, 2015, by regular U.S. Mail on all parties on the attached mailing list.

s/ Tamara D. McKeown  
Tamara D. McKeown

**Electronic Mail Notice List**

- Geoffrey S. Aaronson    gaaronson@aspalaw.com, jevans@aspalaw.com
- Paul J. Keenan, Jr.    keenanp@gtlaw.com, mialitdock@gtlaw.com;miaecfbky@gtlaw.com
- Keith L Maynard    kmaynard@sdlitigation.com
- Tamara D McKeown    tdmckeown@mckeownpa.com
- Niall T McLachlan    nmclachlan@carltonfields.com, cguzman@carltonfields.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- Kelly H Papa    kpapa@coj.net

Mailing List on following Page

14

**Aaronson Schantz Beiley P.A. | Miami Tower | 100 SE 2nd Street, 27th Floor | Miami, Florida 33131 | 786.594.3000 | Fax 305.424.9336**

Carlos A. Delgado
2301NW 87 Ave
Miami, FL 33172

3 minor children of Derek Johnson
Spohrer & Dodd, P.L.
701 W. Adams St., Suite 2
Jacksonville, FL 32204-1641

Riverwalk Jacksonville Development, LLC
200 S.E. 1st Street, Suite 700
Miami, FL 33131-1909

U.S. Century Bank
c/o Brian P Yates
80 SW 8 St #3100
Miami, FL 33130-3004

Augusto Vidaurreta
744 Lake Avenue Drive
Miami Beach, FL 33140

Brett Engelhard
10781 NW 5th Street
Plantation, FL 33324-1518

CHLN, Inc.
c/o Landry's, Inc.
1510 West Loop South
Houston, TX 77027-9505

Christy Hayes
8123 Noroad
Jacksonville, FL 32210-6329

Harold Gubnitsky
10422 Loan Star Place
Davie, FL 33328-1342

(p)IPFS CORPORATION
30 MONTGOMERY STREET
SUITE 1000
JERSEY CITY NJ 07302-3865

Internal Revenue Service
Centralized Insolvency Operation
P.O. Box 7346
Philadelphia, PA 19101-7346

JEA
21 West Church Street
Jacksonville, FL 32202-3158

JEA
PO Box 45047
Jacksonville, FL 32232-5047

Larry Gordon
10970 SW 69th Avenue
Miami, FL 33156-3931

Marcum, LLP
Attn: Michael Novak
One SE Third Avenue, 16th Floor
Miami, FL 33131-1709

Michael Corrigan, Tax Collector
Duval County Tax Collector
231 E. Forsyth St., Ste 130
Jacksonville, FL 32202-3380

Pardo Family Trust
200 SE 1st Street, Suite 700
Miami, FL 33131-1909

Sabadell United Bank, N.A.
c/o Alan M. Grunspan
Carlton Fields
100 SE 2nd Street, Suite 4200
Miami, FL 33131-2113

Safetouch Security Systems
Attn: Amy Dode
9555 Sunbeam Center Drive
Jacksonville, FL 32257-6185

Sherrie Gibson
390 Plantation Landings Drive
Haines City, FL 33844-6354

Stevan J. Pardo, Esq.
200 S.E. 1st St., Ste 700
Miami, FL 33131-1909

Summit Electrical Contractors, Inc.
13790 Ranch Road
Jacksonville, FL 32218-9401

Tom Richardson
6411 S.W. 98th Street
Miami, FL 33156-3338

U.S. Century Bank
2301 NW 87th Avenue
Miami, FL 33172-2408

Jay Shehadeh, Esq.
1305 S. Andrews Ave, Ste 710
Ft. Lauderdale, FL 33301

Michael Novak
One SE 3rd Avenue 16 floor
Miami, FL 33131-1709